**UNITED STATES, Appellee,**

v.

**Eligio PALMER–CONTRERAS and Jose A. Casanova Ortiz, Defendants, Appellants.**

**No. 87–1966.**

United States Court of Appeals, First Circuit.

Submitted Dec. 7, 1987.

Decided Dec. 11, 1987.

Consideration In Banc Denied Feb. 23, 1988.

---

Luis F. Abreu Elias, Hato Rey, P.R., on brief, for defendants, appellants.

Salixto Medina–Malave, Asst. U.S. Atty., Santurce, P.R., Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., and Jorge L. Arroyo, Asst. U.S. Atty., San Juan, P.R., on brief, for appellee.

Before CAMPBELL, Chief Judge, COFFIN and SELYA, Circuit Judges.

PER CURIAM.

Defendants appeal from the denial of pretrial bail. We review the background.

At the detention hearing, Drug Enforcement Administration (DEA) agent Rodriguez testified as follows. Based on intelligence information provided by United States Customs, surveillance was conducted of a pier at Las Croabas, Fajardo, Puerto Rico. On October 1, 1987 at 11:15 p.m., a 23–foot boat was observed coming into port without navigational lights. Customs agents searched the vessel, finding radios of the sort used for communicating with planes and 195 kilos of cocaine. On a wholesale basis, the cocaine is worth $37,-000 to $40,000 per kilo. Hence, there was over $7 million worth of cocaine on the boat. The two defendants were the only occupants of the boat. Defendants were given their Miranda warnings. They then stated that after failing to catch any fish, they had pulled up onto a beach and found burlap bags containing the cocaine. They decided to bring the bags back to the mainland in order to make a little money. Agent Rodriguez did not participate in the arrest or search. Hence, his testimony was based on information provided by customs agents.

Defendants presented six witnesses— their spouses, some neighbors, and friends —who provided the following information. Defendant Palmer has been married for seven years, has two children, and has lived his entire life in Puerto Rico. He has worked for the telephone company since at least 1975 and currently earns $1,200 per month. He owns no real estate or car, but his mother is willing to post her property, worth $40,000 or $50,000, to secure Palmer's release. Defendant Ortiz has been married for seven years, has three children aged five, three, and one, owns no real estate, and has never lived outside Puerto Rico. The family is supported by food stamps and defendant's upholstery business from which defendant earns some-

times $400 per month and sometimes nothing. An aunt is willing to post her property, worth $40,000 to $50,000, to secure defendant's release.

The magistrate concluded that defendants had adequately rebutted the presumption of dangerousness and flight imposed by 18 U.S.C. § 3142(e), stating as follows:

"Defendants are both residents of Puerto Rico with all their family, employment and community ties to this jurisdiction. Neither defendant has ever left Puerto Rico or expressed any intention to do so. Defendants enjoy the reputation of being good neighbors and workers in their communities. Defendants' financial resources and other circumstances indicate that they were but minor players in this billion dollar narcotics game. No evidence of any criminal records or past history relating to narcotics trafficking or abuse was presented as to either of these defendants."

The magistrate set bail at $50,000 for each defendant, to be secured by real estate.

The magistrate's order entered on Friday, October 9, 1987. That afternoon, the government moved to stay the magistrate's release order. The court granted the stay and scheduled a hearing for ten days later, Monday, October 19, 1987. The stated reason for the delay was that the judge would be in Massachusetts attending the judicial conference scheduled for Tuesday, October 13 through Thursday, October 15, 1987. Attendance at the conference is required, unless excused by the chief judge of the circuit. 28 U.S.C. § 333. At defendants' request, the detention hearing was rescheduled for October 21, 1987. A hearing was held that day, but no transcript of it has been provided to this court. Two days later (Friday, October 23, 1987), the judge signed a detention order. The order issued on October 27, 1987.

According to the detention order, the only new evidence submitted at the October 21, 1987 hearing were reports prepared by pretrial services which provided defendants' arrest histories. According to the

detention order, Palmer's only prior contact with the law was an arrest for embezzlement which was not pursued. Defendant Ortiz was convicted of embezzlement,[1] was placed on probation for six months in 1983, was found not guilty of receipt of stolen goods in 1984, and has been arrested or summoned for assault, possession of burglary tools, and attempted theft.

The district court disagreed with the magistrate and concluded no combination of conditions would reasonably assure defendants' appearances. It reasoned that in view of the planes, radios, and large amount of cocaine involved, defendants were involved in a major, sophisticated, international drug transaction. While defendants likely were but "mules" in the transaction, and while perhaps ordinarily a drug organization might be less likely to finance the flight of its mules, given the value of the cocaine, "nothing [was] assured." Furthermore, the weight of the evidence against defendants was great—they were caught red-handed and admitted possession—and the resources available to defendants to secure their release—the relatives' $50,000 real estate—were trivial in the context of the resources surrounding a multi-million dollar drug transaction.

 The burden of establishing that no combination of conditions will reasonably assure a defendant's appearance for trial rests on the government. Where, as here, a defendant is charged with a controlled substance offense punishable by a maximum term of 10 years or more, the government is aided by § 3142(e)'s rebuttable flight presumption. As we explained in *United States v. Jessup*, 757 F.2d 378, 380–86 (1st Cir.1985), this presumption reflects Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries. Forfeiture of even a large bond may be just a cost of doing business, and hence drug traffickers pose special flight risks. Section 3142(e), however, only imposes a burden of production on a defendant. The burden of persuasion remains with the

---

1. Defendant says the conviction actually was for attempt to commit an illegal appropriation, not embezzlement. The correct resolution of that matter makes no difference to our opinion.

government. Nevertheless, even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but rather retains evidentiary weight—the amount depending on how closely defendant's case resembles the congressional paradigm, *Jessup*, 757 F.2d at 387—to be considered along with all the other relevant factors.

Pointing to their strong family ties to Puerto Rico, their meager financial resources, the absence of any prior drug related arrests or convictions, and their minor roles as mules, defendants contend that the district court misapplied § 3142(e)'s presumption and concluded that mere possession of drugs is sufficient ground for detention. We disagree with defendants' interpretation of the district court's detention order. This is no ordinary drug case. Rather, defendants were caught with 195 kilos of cocaine valued at $37,000 to $40,000 per kilo, that is to say, over $7 million worth of cocaine. The large amount of drugs supports the court's inference (for detention purposes) that defendants are connected to persons or an organization with great financial resources, an organization which could finance defendants' relocation. The forfeiture of $100,000 worth of property would have little financial impact on such an organization. In other words, defendants or the persons with whom they are associated would appear to be involved in the " 'highly lucrative' drug operations at the center of congressional concern" and thus be persons at whom the § 3142(e) presumption is aimed. *Jessup*, 757 F.2d at 386. If, indeed, as the district court concluded, the evidence against defendants is strong, the incentive for relocation is increased.

Defendants argue, however, that the case against them is not strong because the search conducted of the vessel was invalid and hence the cocaine and defendants' statements should be suppressed.

At the detention hearing, the government took the position no search warrant was required because the search was a border search; the magistrate responded that that was "clear," and defendants did not then argue otherwise. In its detention order, the district court also referred to the search as a border search. There is no indication in the materials presented to us that defendants ever questioned below the validity of the search as a border search. They argue now, however, that there is no indication the boat had been outside territorial waters and hence there was no justification for a border search. *See United States v. Tilton*, 534 F.2d 1363 (9th Cir. 1976) (search without probable cause pursuant to 19 U.S.C. § 1581(a) of a vessel in a harbor may be valid as a border search provided there are articuable facts to support a reasonably certain conclusion by customs officers that the vessel has crossed the border); *United States v. Zurosky*, 614 F.2d 779, 787–788 (1st Cir.1979) (no basis for concluding vessel had crossed the border; search could not be upheld as a border search), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826 (1980).

Because the matter was not challenged, the government had no reason, in the context of a detention hearing, for further developing the factual predicate for the search. Consequently, as the matter now stands, it is speculative whether defendants are likely to be able to mount a successful motion to suppress. Thus, at the moment, we have no reason to disagree with the district court's conclusion that the evidence against defendants is strong. If, after a hearing on a motion to suppress, for example, matters should appear otherwise, defendants may ask the district court to reconsider the detention order. We, however, will not consider the matter further now. *See United States v. Bayko*, 774 F.2d 516, 520 (1st Cir.1985) (normally all issues and facts to be considered on appeal should first have been put to the lower court).

Hence, in the present case where defendants were caught with over $7 million worth of cocaine, we conclude the district court did not err in giving evidentiary weight to § 3142(e)'s rebuttable presumption of flight and in determining that no combination of conditions would reasonably assure defendants' appearances.

Last, defendants argue they should be released because the district court took too long in granting them a hearing and issuing an opinion.

Section § 3142(f) provides, in part, as follows:

"The hearing [on the government's motion to detain a person without bail] shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days.... The person may be detained pending completion of the hearing."

Defendants do *not* contend that their hearing before the magistrate was not held sufficiently promptly. They seem to argue, however, that § 3142(f)'s time limits apply to the district court's review of the magistrate's release order. The district court took a similar position, stating that the United States, by moving for a stay of the magistrate's release order pending the district court's review, was in effect requesting a continuance of the detention hearing. The court stated that " '[e]xcept for good cause, a continuance on the motion ... of the attorney for the Government may not exceed three days.' 18 U.S.C. § 3142(f)." The court found good cause, however, in its required attendance at the judicial conference. Alternatively, defendants argue that even if § 3142(f)'s time limits are not strictly applicable and that the controlling section rather is § 3145(a) which states that a motion for review of a release order "shall be determined promptly," in either case the district court delayed too long.

█ We need not determine whether § 3142(f)'s time limits are strictly applicable when the government seeks a stay of a release order, for even if they are, we agree, in the unique circumstances of this case, with the district court that the judge's attendance at the judicial conference constituted good cause for the delay. The judi-

cial conference occurs but once a year. A hearing appears to have been scheduled for as soon as possible after the judge's return. The hearing was then postponed, the docket indicates, for two days at defendants' request. A detention order was signed two days later. There is no indication that defendants asked that the bail matter be determined solely on the record before the magistrate, a process that theoretically might have allowed for a speedier determination. In contrast to *United States v. Fernandez–Alfonso*, 813 F.2d 1571 (9th Cir.1987), where, through inadvertence, 30 days passed between the filing of defendant's motion for review of the magistrate's detention order and the district court hearing on the motion and the Ninth Circuit ordered release because of the delay, in the present case the district court was attentive to the need for promptness, but unable to accommodate defendants because of judicial travel commitments.

The detention order is affirmed. Defendants' request to stay their trial date is denied.