USCA1 Opinion

 

 February 10, 1992 ___________________ No. 91-2208 UNITED STATES, Appellee, v. EDGARDO PUBILL RIVERA, Defendant, Appellant. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ___________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ ___________________ Jose Antonio (ABI) Lugo on brief for appellant. _______________________ Robert S. Mueller, III, Assistant Attorney General, Mary Lee ______________________ ________ Warren, Chief Narcotic and Dangerous Drug Section, William H. ______ ___________ Kenety and Daniel F. Lopez-Romo, United States Attorney, on brief ______ ____________________ for appellee. __________________ __________________ Per Curiam. Appellant, Edgardo Pubill-Rivera, appeals __________ from the decision of the United States District Court for the District of Puerto Rico denying his request for release pending trial. BACKGROUND __________ Appellant was indicted, along with over 25 other persons, on charges of conspiring to possess cocaine with the intent to distribute it and with aiding and abetting the possession of cocaine with the intent to distribute it. The amount of cocaine involved was over 10,000 kilograms. According to the government, appellant played a leading role in this large drug trafficking conspiracy. A detention hearing was held on September 20, 1991. The hearing revealed the following evidence. Appellant has seven children, several of whom he supports. He has lived with his common-law wife for the past eight years. At the time of his arrest, appellant was employed at the gas station owned by his father. He was receiving approximately $2,500 per month as salary. Appellant owns the home in which his father lives; it is worth approximately $80,000. Appellant refused to divulge the existence of other financial assets to pretrial services. Appellant stated that friends and family were willing to post eight parcels of real estate worth over $440,000 as security for bail. As for appellant's past criminal activity, he has three prior narcotics convictions. Upon his first conviction, appellant was sentenced to probation. However, probation subsequently was revoked due to a violation of the terms of this release. Nonetheless, appellant averred that he had been released on bail in all three cases and always had appeared in court when required. The government cross-examined appellant's sister. In addition to the home in which their father lives, appellant's sister stated that she, appellant and their father own a laundromat and that appellant owns a second home. She stated that she had, on one occasion, purchased a bank check for $8,000 or $9,000 for her brother; she did not know how her brother had obtained the money for this check. The government also proffered the following evidence. Although appellant's tax return showed a yearly income of only $24,000, appellant owned assets that indicated unexplained sources of income. These assets included a condominium, a $68,000 speedboat apparently paid for in cash, $195,000 in real estate equity and three bank accounts. Appellant has a passport and has travelled outside of the United States. In addition, when he was arrested he possessed two fake drivers' licenses. Finally, under the Sentencing Guidelines, appellant probably would be subject to a minimum sentence of 25 years. The magistrate judge before whom the hearing was held ordered appellant detained prior to trial. He considered the magnitude of the drug enterprise of which appellant was a part and the length of the minimum sentence to which appellant could be exposed. Based on these factors, the magistrate judge 3 concluded that appellant could not be trusted to follow any conditions of release. In addition to finding that appellant would pose a danger to the community if released, the magistrate judge determined that the seriousness of the charges appellant faces, along with the unexplained sources of income, provided appellant with the incentive to flee. The district court judge affirmed the detention order, rejecting appellant's argument that 18 U.S.C. 3142(g) prevented the magistrate judge from considering defendant's sources of income. DISCUSSION __________ Based upon the transcript of the detention hearing, the district court's findings and the parties' briefs, we now consider the merits of the appeal. A special standard of review applies to pretrial detention orders: We approach our task mindful of our obligation to afford independent review, tempered by a degree of deference to the determinations made below. Recognizing that appellate courts are ill-equipped to resolve factbound disputes, this standard cedes particular respect, as a practical matter, to the lower court's factual determinations. Hence, independent review represents an intermediate level of scrutiny, more rigorous than the abuse-of-discretion or clear-error standards, but stopping short of plenary or de novo review. _______ United States v. Tortora, 922 F.2d 880, 882-83 (1st Cir. _____________ _______ 1990) (citations omitted). The grand jury indictment provided probable cause to believe that appellant had committed an offense for which a maximum term of ten years or more is prescribed in the 4 Controlled Substances Act, 21 U.S.C. 801 et. seq. See __ ___ ___ United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986) _____________ ______ (per curiam). Thus, the statutory presumption contained in 18 U.S.C. 3142(e) became applicable. This provides that "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." To rebut this presumption, appellant need only produce "some evidence" to show that "what is true in general is not true in [his] particular case . . . ." United States v. Jessup, _____________ ______ 757 F.2d 378, 384 (1st Cir. 1985). This is a burden of production, not persuasion. Id. at 380-81. However, even __ assuming appellant successfully rebuts the presumption by producing "some evidence," the bubble does not "burst." Id. __ at 383. The burden of persuasion remains on the government, but the rebutted presumption retains evidentiary force: it becomes a factor to be considered in addition to the other relevant factors in 3142(g). United States v. Palmer- ______________ _______ Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam). _________ On the facts before us we agree with the district court that a detention order was justified under the terms of the statute. Congress has made it clear that "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" S. Rep. No. 98-225, 98th Congress, 2d Sess. 13 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3196. Here, ____________ 5 there is the risk that appellant might return to the narcotics trade if released on bail; appellant's past convictions did not prevent him from continuing to engage in drug trafficking. Of relevance is the fact that he violated the terms of his probation which then was revoked. See, ___ e.g., United States v. Williams, 753 F.2d 329, 335 (4th Cir. ___ _____________ ________ 1985) (finding evidence that defendants would "continue to be involved in narcotics if released on bail" based upon fact that they had done so despite presence of prior convictions and parole supervision); United States v. Dominquez, 629 F. _____________ _________ Supp. 701 (N.D. Ind. 1986) (detention on grounds of danger to community ordered where defendant drug suppliers continued to engage in drug-related activities even after government intervention). Appellant's evidence did not significantly negate the risk of danger established by the government. Indeed, most of his evidence did not relate directly to the issue of the "safety of community." Rather, the evidence of the number of persons willing to aid appellant in securing bail related to his community ties and the risk of flight question. As Congress has pointed out, community ties have no correlation with the question of the safety of the community. See S. Rep. at 24, reprinted in 1984 U.S.C.C.A.N. ___ ____________ at 3207. In addition, the evidence concerning the undisclosed financial assets belonging to appellant and his 6 apparent access to large amounts of cash supports the district court's finding that appellant presents a risk of flight. Indeed, appellant has a passport and the apparent wherewithal to obtain false identification. Finally, appellant appears to belong to a large narcotics trafficking organization; further, he is not just a "mule." Compare _______ United States v. Palmer-Contreras, 835 F.2d at 18 (despite ______________ ________________ the fact that defendants were only mules, detention proper on risk of flight grounds where organization for which defendants worked appeared to have significant financial resources to assist flight). In conclusion, the seriousness of the charges against appellant, the stiff sentence he faces if convicted, the nature and size of the criminal enterprise to which he allegedly belongs, his apparent access to large amounts of cash and the fact that he continued to engage in drug- trafficking after three state drug convictions provide a solid foundation on which to base a detention order. The order of the district court is affirmed. The motion to dispense with oral argument is denied as moot. 7