963 F.2d 366
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Kim De Los SANTOS-FERRER, Defendant, Appellant.
United States, Appellee,
v.
Pedro Ayala-Rosario, Defendant, Appellant.
 No. 92-1445.
 No. 92-1446.
 United States Court of Appeals,
First Circuit.
 June 5, 1992
 
 Appeals from the United States District Court for the District of Puerto Rico
 Joaquin Monserrate Matienzo, on brief for appellant Kim de los Santos-Ferrer.
 Everett M. DeJesus, on brief for appellant Pedro Ayala-Rosario.
 Daniel F. Lopez Romo, United States Attorney, and Antonio R. Bazan, Assistant United States Attorney, on brief for appellee.
 D. Puerto Rico
 Affirmed.
 Before Breyer, Chief Judge, Campbell, Senior Circuit Judge, and Cyr, Circuit Judge.
 Per Curiam.
 
 
 1
 Defendants-appellants Kim de los Santos-Ferrer ("Santos") and Pedro Ayala Rosario ("Ayala") were arrested by federal agents on February 5, 1992 and later indicted by a grand jury for importing and possessing with intent to distribute four kilograms of cocaine. The government filed motions in the district court for pretrial detention of Santos and Ayala under 18 U.S.C. § 3142(f). A magistrate judge held detention hearings and issued orders setting bail for Santos at $225,000 with use of an electronic monitoring device, and setting bail for Ayala at $150,000 with additional conditions to be imposed upon release.
 
 
 2
 The government on February 14, 1992 filed motions requesting that the district court undertake a de novo review of the magistrate judge's orders and, in the meantime, stay both defendants' release. The district court granted the stays and, on February 28, 1992, conducted a de novo hearing. On March 27, 1992, the district court entered an order denying bail and directing detention pending trial of both Santos and Ayala. Santos and Ayala appeal. We affirm.
 
 
 3
 At the de novo hearing the government introduced the tape of a consensually monitored telephone conversation held on February 5, 1992, between Santos and a confidential informant. This tape was played in open court. In this conversation the informant told Santos when and where a shipment of cargo from Colombia would arrive by boat in Puerto Rico later that day. The informant made reference to a Mr. Estela in Colombia, whom Santos acknowledged he knew. It was arranged that Santos would meet the boat in Ponce and would be driving a gold Porsche. The informant pressed Santos to be sure to bring the requisite money. The government also introduced a tape of a second consensually monitored telephone conversation held a few minutes later between the informant and another individual, in which this drug pickup was further planned.
 
 
 4
 According to the government's evidence, later that day Santos, Ayala and Jairo Torres, a Colombian national, appeared at the dock area in Ponce in a Mitsubishi automobile. Santos was driving. They approached the informant and asked him to enter the vehicle. He did so and placed on the floor in the back seat of the automobile a wrapped-up package containing four kilograms of cocaine. He asked about the money and was told by Santos that that was no problem. The informant sat in the back, next to Ayala, and the automobile began to drive away. Federal agents then ordered the car to stop. Santos, Ayala, and Torres were placed under arrest.
 
 
 5
 Although defendants were driving a Mitsubishi, the government introduced evidence that Santos owns a gold Porsche, the keys to which were seized upon his arrest. Also seized from the automobile were $3,970 in U.S. currency; a cellular telephone assigned the number to which the confidential informant's two calls had been placed; and documents belonging to Santos' sister, Maria de los Santos-Ferrer, relating to a pending cocaine case in federal court in Puerto Rico in which she is a defendant. A beeper/pager was seized from Ayala. A federal agent testified that through all this Ayala sat in the back of the car, saying nothing, until his arrest.
 
 
 6
 The government also proffered evidence of prior cocaine smuggling activity by Santos and Ayala. According to this evidence, on September 24, 1991, following a high-speed chase, federal agents found 93 kilograms of cocaine in two suitcases in a Jeep Cherokee. Also inside the vehicle were found a cellular phone, whose memory revealed that the last number dialed on the phone was the number of Santos' home; a beeper belonging to Santos' wife; and a beeper belonging to Ayala. Ayala's beeper contained messages to call a liquor store owned by Santos and to call the alias of a Dominican national who was later charged with a murder that occurred at the landing site of the 93 kilograms of cocaine.
 
 
 7
 The Jeep Cherokee was registered in the name of Ayala's father and was reported stolen the next day by Ayala's sister, who gave two different accounts of the place from which it had been stolen. Ayala later stated that his beeper was in the vehicle because he was fixing it the day before it was seized.
 
 
 8
 The government also proffered evidence that in another cocaine prosecution in which three defendants pleaded guilty, one of the defendants at the time he was arrested had a beeper containing a message to call the liquor store owned by Santos. In yet another cocaine prosecution, a confidential informant identified Santos as the source of the cocaine.
 
 
 9
 Evidence in the record showed that Santos has lived in Puerto Rico, where he has a wife and three minor children, for the last thirty years. He works in Puerto Rico as a well-known musician, singer, and band leader, and also owns a liquor store. Ayala, similarly, is a lifelong resident of Puerto Rico, where he has a wife and two minor children. He works in Puerto Rico as a self-employed truck driver and mechanic.
 
 
 10
 The district court, finding probable cause to believe that Santos and Ayala had committed a narcotics offense carrying a maximum term of imprisonment of ten years or more, invoked the presumption of dangerousness and risk of flight in 18 U.S.C. § 3142(e). The court ordered pretrial detention of both Santos and Ayala on the grounds "that no condition or combination of conditions will reasonably assure the appearance of these defendants as required and the safety of the community." The district court summarized its findings as follows:
 
 
 11
 Because of their strong community ties, the question of whether these two defendants will probably flee is not easily answered although the incentive to leave is increased by the weight of the evidence in the government's case. However, the question of their dangerousness to the community is more readily resolved against them. These are not minor players on the stage of drug trafficking. The vehicles, beepers, cellular phones, telephone tolls and quantities of cocaine involved in this and related cases, plus their active involvement with other major drug traffickers lead to the conclusion that if released they will pose an immediate danger to the safety of the community.
 
 
 12
 We undertake an independent review of the district court's pretrial detention decision, but with appropriate deference to the district court's first-hand judgment. United States v. O'Brien, 895 F.2d 810, 814 (1st Cir. 1990). See United States v. Bayko, 774 F.2d 516, 520 (1st Cir. 1985).
 
 
 13
 We agree with the district court that the government made out a strong case that "[t]hese are not minor players on the stage of drug trafficking." The evidence against both Santos and Ayala in the instant case appears weighty. According to this evidence, both men arrived in the same automobile for the pre-arranged cocaine pickup. The arrangement was made by the confidential informant on behalf of an individual in Colombia; a Colombian national accompanied Santos and Ayala in the automobile. It was Santos whom the confidential informant had been instructed to call to arrange the pickup.
 
 
 14
 In addition, the government's proffer of evidence regarding other incidents of cocaine smuggling, as outlined above, persuasively suggests that both Santos and Ayala are deeply involved in the local trade in cocaine. In two of these incidents, as well as in the instant case, calls to Santos' cellular telephone or home, or messages on beepers to call Santos' liquor store, appear to have played a role in the cocaine transaction. In one of these incidents, as well as in the instant case, a beeper belonging to Ayala was seized. All of this evidence makes it difficult to think that the instant charges against Santos and Ayala arise out of an isolated incident in which either played only a bit part.
 
 
 15
 This evidence is bolstered, of course, by the presumption of dangerousness established by 18 U.S.C. § 1342(e). The presumption is triggered in this case because both Santos and Ayala have been indicted for a drug offense that carries a maximum term of imprisonment of ten years or more. Id.; 21 U.S.C. §§ 841(a)(1), (b)(1)(A). Even if Santos or Ayala were deemed to have introduced "some evidence" to rebut the presumption, "the presumption does not disappear, but rather retains evidentiary weight-the amount depending on how closely defendant's case resembles the congressional paradigm-to be considered along with all the other relevant factors." United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (citation omitted). See United States v. Jessup, 757 F.2d 378, 382-84 (1st Cir. 1985).
 
 
 16
 Given the above-discussed evidence of defendants' apparent involvement in a drug trafficking organization, this case does indeed closely resemble the Congressional paradigm. Congress found that "[p]ersons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism." S. Rep. No. 98-225, 98th Cong., 2d Sess., at 20, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3203. Congress felt that an "especially significant" consideration in determining danger to the community "is the drug network's ability to continue to function while the defendant awaits trial." United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985). We are satisfied that the government's evidence, viewed in the light of the statutory presumption, establishes that both Santos and Ayala would pose a danger to the community if released pending trial.
 
 
 17
 Although we need not reach the issue, we would also conclude that pretrial detention is justified on risk-of-flight grounds, although we agree with the district court that this question is much closer. It is true that both Santos and Ayala have close and long-standing personal and family ties to Puerto Rico. On the other hand, the government's evidence strongly suggests that they are active participants in a drug trafficking operation with close ties to Colombian drug traffickers. The evidence suggests that Santos himself has been in contact with them. Thus, there is ample reason to believe that both Santos and Ayala have both the incentive and the wherewithal to flee.
 
 
 18
 The statutory presumption of risk-of-flight also applies and, although rebutted, retains evidentiary weight. "[T]his presumption reflects Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries. Forfeiture of even a large bond may be just a cost of doing business, and hence drug traffickers pose special flight risks." Palmer-Contreras, supra, 835 F.2d at 17.
 
 
 19
 It is as to close issues like this, moreover, that the deference that we accord to the district court's first-hand determinations in bail cases, O'Brien, supra, 895 F.2d at 814, comes into play. The district court, at a de novo hearing, heard the taped telephone calls placed by the confidential informant, including the one with Santos, and the testimony of the federal agent who made the arrest. Given the strength of the government's evidence of defendants' involvement in a drug trafficking organization, we are not moved to quarrel with the district court's first-hand determination (albeit conclusorily stated) that defendants' ties to foreign drug traffickers are sufficiently strong so that pretrial detention of both defendants is justified on risk-of-flight grounds.
 
 
 20
 The district court's pretrial detention orders are affirmed.