974 F.2d 1329
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES of America, Plaintiff, Appellee,
v.
Luis Ernesto IGLESIAS-BENITEZ, Defendant, Appellant.
 No. 92-1837.
 United States Court of Appeals,
First Circuit.
 September 1, 1992
 
 Appeal from the United States District Court for the District of Puerto Rico
 Luis Rafael Rivera on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose A. Quiles Espinosa, Senior Litigation Counsel, and Rosa Emilia Rodriguez Velez, Assistant United States Attorney, on brief for appellee.
 D. Puerto Rico
 AFFIRMED.
 Before Torruella, Cyr and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Luis Ernesto Iglesias Benitez appeals from a district court order affirming the magistrate-judge's denial of bail pending trial. For the reasons that follow, we affirm.
 
 
 2
 On May 6, 1992, appellant was indicted on charges of participating in a broad-based conspiracy to import and distribute multi-kilo quantities of heroin. In particular, defendant is charged in count two with agreeing to provide to another defendant $150,000 for purchase of about 3.5 kilograms of heroin in Hong Kong, to be imported and distributed in Puerto Rico. He is charged in count twelve, in combination with others, with transporting about $310,000 in cash from the United States to a place outside the United States in furtherance of drug trafficking. And he is charged in counts thirteen and fourteen with importing and possessing with intent to distribute, over two kilograms of heroin.
 
 
 3
 On motion by the prosecution for detention without bail, a hearing was held before the magistrate-judge on June 4, 1992. The magistrate-judge heard from both prosecution and defense counsel, accepting into evidence the testimony proffered in defendant's thirteen page cross-motion for release on bail. The magistrate-judge also accepted into evidence the Pretrial Services Report, ultimately adopting it by reference in his opinion.[1]
 
 
 4
 Defendant is thirty years old, a native of Puerto Rico and father of five children, at least three of whom he supports. The witnesses he proffered included his mother, brother-in-law, a former common-law wife and two current common law wives. This evidence was accepted by the magistrate as proof of strong family and community ties. Defendant has steady employment as a grocer in a store he apparently owns. He proposed a variety of conditions for his release which he claimed would guarantee his appearance at trial, including the posting of a $150,000 real estate bond, a limited form of house arrest, supervision by a custodian, and the wearing of an electronic bracelet.
 
 
 5
 Defendant said that he had known for several weeks prior to his arrest that he was a target of the grand jury investigation and was planning to surrender, but did not. When he was arrested, two weeks after the indictment, he was in possession of his murdered brother's handgun. He allegedly explained to Drug Enforcement Administration officials that he had been given the gun by a third person after his brother's death. In any event, defendant did not have a license for the gun and also faces charges for illegal possession of a firearm. See 18 U.S.C. § 922(g)(1).[2]
 
 
 6
 In addition to the federal charges against him, defendant is currently on probation from a three-year suspended sentence for a felony violation of a state controlled-substances law (possession of marijuana). Another recent state charge, statutory rape of a teenage girl, was dismissed when defendant acknowledged paternity of the child born to the victim. Finally, the prosecutor proffered that defendant is currently the subject of a state investigation into the murder of a former drug trafficker.
 
 
 7
 The magistrate-judge found that despite defendant's strong family and community ties and lengthy residence in the community, no condition or combination of conditions will reasonably assure defendant's appearance and the safety of the community. The district court affirmed the detention order on June 19, 1992.
 
 DISCUSSION
 
 8
 In pretrial detention cases we follow a special standard of review: "independent review, tempered by a degree of deference to the determinations made below." United States v. Tortora, 922 F.2d 880, 882 (1st Cir. 1990). We give "respect ... to the lower court's factual determinations," using "an intermediate level of scrutiny, more rigorous than the abuse-of-discretion or clear-error standards, but stopping short of plenary or de novo review." Id. at 883; United States v. O'Brien, 895 F.2d 810, 814 (1st Cir. 1990).
 
 
 9
 The government bore the burden of proving that no combination of conditions would reasonably assure defendant's appearance or the safety of the community. United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam). To meet this burden the government was required to offer clear and convincing evidence to prove dangerousness; and a preponderance of the evidence to prove a risk of flight. See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). The grand jury indictment, however, facially established probable cause to believe that appellant had committed an offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801 et. seq. and the Controlled Substances Import and Export Act, 21 U.S.C. § 951 et. seq. See United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986). Thus a rebuttable presumption arose that no "condition or combination of conditions will reasonably assure" the defendant's appearance and "the safety of any other person and the community." 18 U.S.C. § 3142(e), (f).
 
 
 10
 Although defendant predicts that the actual sentence he stands to receive under the Sentencing Guidelines will be as short as eight years, the statutory presumption is triggered solely by the seriousness and type of crime charged. United States v. Moss, 887 F.2d 333, 336-37 (1st Cir. 1989). While prediction of a lesser sentence may affect the weight assigned to the presumption, id. at 337, we agree with the magistrate-judge that defendant's analysis here is too "ethereal" to diminish the presumption's force. Especially in light of his prior state felony conviction, defendant is actually faced with a possible minimum term of twenty years' imprisonment. See 21 U.S.C. § 841(b)(1)(A)(i).
 
 
 11
 Thus, to rebut the statutory presumption, defendant needed "some evidence" to show that "what is true in general is not true in [his] particular case...." United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The burden is one of production, not persuasion. Id. at 380-81. When met, the presumption does not disappear entirely. Id. at 383. It retains evidentiary weight, the amount dependent on how closely defendant's case resembles the congressional "paradigm." Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383. Its remaining force is considered along with the other relevant factors in 18 U.S.C. § 3142(g). Palmer-Contreras, 835 F.2d at 18; O' Brien, 895 F.2d at 815.
 
 
 12
 The evidence offered by defendant did little to mitigate the risk of danger that informs the presumption. The charges in the indictment place defendant squarely within the paradigm of a drug trafficker who has "both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences". Senate Report No. 98-225, 98th Congress, 2d Session at 20, reprinted in U.S. Code Cong. & Ad. News at 3203. Defendant is charged with agreeing to supply large quantities of cash to finance drug purchases abroad in connection with a multi-person conspiracy that spanned at least two continents. In addition, defendant has visible access to other resources which might finance a flight from prosecution. He has owned a grocery business for several years, an interest in real estate, several automobiles, and enjoys "a comfortable financial condition" according to the Pretrial Services Report. Compare Palmer-Contreras, 835 F.2d at 18 (although defendants were only "mules" and had no individual means of their own, detention was proper on risk-of-flight grounds where narcotics organization for which they worked appeared to have significant financial resources to assist their flight).
 
 
 13
 Although defendant presented evidence of strong family and community ties, offered security, and pointed to his faithful appearance at all prior court and probation dates, the government's case against defendant is strong and he faces potentially severe penalties. In light of defendant's means and the motive to flee, a preponderance of the evidence supported the magistrate-judge's decision that defendant presented a risk of flight. See United States v. Dillon, 938 F.2d 1412, 1416-17 (1st Cir. 1991) (court did not err in denying bail on risk of flight grounds where evidence showed defendant's connection to narcotics ring which could absorb loss of $200,000 worth of security).
 
 
 14
 Moreover, defendant presented no evidence to rebut the presumption that his release would pose a risk to the safety of the community. Congress has made it clear that "the risk that a defendant will continue to engage in drug trafficking constitutes" a danger to the community. Senate Report at 13, reprinted in U.S.C.C.A.N. at 3196. Defendant was already on probation from one felony conviction for a narcotics crime when he was indicted here. Given the monetary incentives involved and his demonstrated inclination to remain in the drug trade despite government intervention, there is clear and convincing evidence that he would continue were he released on bail. See United States v. Williams, 753 F.2d 329, 335 (4th Cir. 1985) (where finding that defendants, if released, would continue to be involved with narcotics was based on the fact that they had already done so "despite convictions and parole supervision"). In addition, defendant's possession of a gun at the time of his arrest adds weight and immediacy to the government's contention that he presented a danger to the community.[3]
 
 
 15
 Finally, defendant's possession of a firearm despite his status as a probationer, and his self-professed knowledge that he was a target of the instant investigation, manifest a flagrant disdain for the authority of the law. This circumstance wholly undermines the value of defendant's claimed willingness to submit to a variety of conditions allegedly designed to assure his appearance in court. Most of the conditions proposed "hinge on the defendant's good faith compliance," and "can be too easily circumvented," a flaw which "takes on great significance where ... little about defendant ... suggests that good faith will be forthcoming." Tortora, 922 F.2d at 886-87. In any event, the conditions defendant proposed, like the evidence he presented of strong family and community ties, has "no correlation with the question of the safety of the community," Senate Report at 24, reprinted in U.S.C.C.A.N. at 3207.
 
 
 16
 For the reasons stated, there is sufficient evidence to conclude that no combination of conditions will reasonably assure defendant's appearance and the safety of the community. The decision below is affirmed.
 
 
 
 [1]
 Both parties accepted the procedure followed here without objection and both relied on the Pretrial Services Report in their arguments to the magistrate-judge and their briefs here. The decision to rely on defendant's proffer, rather than live testimony, was apparently based on the fact that defendant's witnesses were unable to reach the courthouse due to inclement weather. The hearing had previously been postponed several times to allow defendant to obtain counsel of his choice
 
 
 [2]
 Defendant was indicted on July 22, 1992, for violation of 18 U.S.C. § 922(g)(1) (unlawful for convicted felon to knowingly receive a firearm which has been transported in interstate commerce). The indictment identifies the handgun as a .9mm Smith and Wesson semi-automatic pistol. See note 3, infra
 
 
 [3]
 This conclusion is further buttressed by testimony given at defendant's second detention hearing, following his indictment for possession of the firearm. The magistrate-judge's detention order there recites a government agent's testimony that the gun was loaded when it, and additional ammunition, were seized from defendant's control. Defendant reportedly said he needed the gun because one Jose Alberto Cosme had attempted to kill him. The agent testified to information that defendant is a suspect in the murder of Jose Alberto Cosme, and currently holds "a strong control on narcotic distribution" in a public housing project. Though we rarely consider materials which were not presented to the court directly below, both parties have referred to the subsequent indictment in their briefs, the magistrate-judge's opinion there is part of the court's records, and defendant had an opportunity to rebut this evidence at the second hearing. Tortora, 922 F.2d at 884 n.5; O'Brien, 895 F.2d at 814 & n.6; F.R.A.P. 9(a)(b). See United States v. Bayco, 774 F.2d 516, 520 (1st Cir. 1985)