August 15, 1994
 [NOT FOR PUBLICATION]
 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 94-1535

 UNITED STATES,

 Appellee,

 v.

 JUAN CARLOS ARROYO-REYES,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Jose Antonio Fuste, U.S. District Judge]
 

 

 Before

 Cyr, Boudin and Stahl,
 Circuit Judges.
 

 

 Luis F. Abreu Elias on brief for appellant.
 
 Guillermo Gil, United States Attorney, and Miguel A.
 
Pereira, Assistant U.S. Attorney, on brief for appellee.
 

 

 

 Per Curiam. Defendant Juan Carlos Arroyo-Reyes appeals
 

from a district court order denying him bail. For the

following reasons, we affirm.

 I.

 On March 9, 1994, a federal grand jury returned a five

count indictment charging defendant with conspiracy to

distribute at least fifty grams of cocaine base, five

kilograms of cocaine, and one kilogram of heroin, see 21
 

U.S.C. 841(a)(1), 846; continuing criminal enterprise, see
 

21 U.S.C. 848(a)-(b); and using and carrying firearms in

relation to a drug trafficking offense, see 18 U.S.C. 
 

924(c)(1). The indictment further charged, as overt acts,

that defendant supervised sales of controlled substances; and

that he and his co-conspirators used weapons to protect drug

operations, to carry out carjackings, and to intimidate

honest citizens who might report on their activities to law

enforcement officials. Following defendant's arrest on these

charges, a detention hearing was held before a magistrate

judge. The magistrate decided to detain defendant without

bail pending trial on grounds of risk-of-flight. A de novo

hearing was subsequently held before the district judge on

April 22, 1994. 

 At the detention hearings, F.B.I. Special Agent Todd

Polley testified for the government. Polley testified that

based on information provided him by confidential sources and

 -2-

the local police precinct, the defendant is the leader of an

approximately twenty-six member gang which operates a drug

point in Toa Baja, Puerto Rico, and which uses weapons to

protect its members and its stashes of money from rival

gangs. Polley and other FBI agents conducted surveillance of

the alleged drug point and observed individuals carrying

weapons, communicating by radio equipment, and conducting

what appeared to be drug transactions. On one occasion,

agents observed over one hundred transactions take place

within a three hour period. A controlled buy confirmed that

drugs were being sold. Agent Polley saw defendant at the

drug point on a number of occasions, and observed that he

appeared to be followed by body guards.

 Polley further testified that a search of defendant's

home revealed over $14,000 cash, a money counter, ziplock

bags similar to those used to package drugs, and radio

transmission equipment similar to that used by the gang

members to communicate with each other. Tape recordings of

overheard radio communications, played at the hearings,

included references by gang members to weapons, drugs and

carjackings. On one of these tapes, gang members discussed

freshly spray-painted threats designed to intimidate

community members perceived to be "snitches" or "stool

pigeons." Other evidence included a photograph which

depicted defendant, roughly fifteen feet away from the drug

 -3-

point, wearing a cellular phone on his hip pocket and

accompanied by two individuals, one of whom was carrying a

pistol. Another photograph depicted defendant transferring a

packet from the drug point to a motor vehicle.1 Finally,

the government proffered testimony that on September 6, 1993,

defendant and another individual were arrested in Bayamon,

Puerto Rico with $30,598 cash, two kilograms of cocaine, and

two loaded weapons.2 As a result of this arrest, defendant

faces charges in the Superior Court of Puerto Rico.

 The defendant is twenty years old and a life-long

resident of Puerto Rico. At the time of his arrest, he was

living with his grandfather. Defendant proffered witnesses

who would testify, among other things, to his strong family

and community ties; his positive employment history,

including work as an electronic technician and a laborer in

the construction industry; his religious upbringing; and his

good reputation in the community. One witness, a former

employer, would have testified that defendant was a "trusted

employee," and that he was willing to employ defendant again

and to provide employment records to the court. Another

witness would have testified that defendant had studied

electronics and had a part-time job in his home fixing

 

1. The contents of the packet is unknown. 

2. Defense counsel contested this proffered testimony,
stating that defendant was merely a passenger in a motor
vehicle in which drugs and weapons were found.

 -4-

electronic equipment. Defendant's grandfather offered to

post his home (worth $44,000) as bond, as well as to serve as

a third-party custodian if defendant were released.3 

 The district court affirmed the magistrate judge's

detention order on the grounds that defendant is both a risk

of flight and a danger to the community. The court first

observed that where, as here, a defendant has been indicted

for a drug offense punishable by ten or more years under 21

U.S.C. 801 et seq., as well as a firearm offense under 18

U.S.C. 924(c)(1), a "rebuttable presumption" arises that no

condition or combination of conditions will reasonably assure

his appearance as required and the safety of the community.

See 18 U.S.C. 3142(e); United States v. Vargas, 804 F.2d
 

157, 163 (1st Cir. 1986) (per curiam) (indictment is

sufficient to establish probable cause for purposes of

triggering the rebuttable presumption in 3142(e)). The

court then stated:

 Mindful of the fact that the presumption shifts to
 the defendant the burden of production, not the
 burden of persuasion, the defendant's proffer of
 evidence is not enough to grant him bail. This
 record contains strong indicia of defendant's
 involvement in a drugs and firearms conspiracy and
 criminal enterprise. The testimony of F.B.I.
 Special Agent Todd Polley, as well as the taped
 recordings and photo evidence, so confirm. The
 defendant operated what appears to be a large drug

 

3. The transcript of the de novo bail hearing also indicates
that defendant submitted to the court a letter signed by
seventy-seven community members. This letter was not
presented to us on appeal.

 -5-

 point backed up by a twenty-plus member
 organization under his direction. Large amounts of
 cash were seized. The presence of cash suggests
 that fleeing is easier to achieve. Money buys
 access to boats and private airplanes to a
 multitude of neighboring islands, from where
 further escape is quite easy. Furthermore, the
 obvious violent nature of the drug-related
 activities and the use of firearms and armed
 carjacking demonstrate that the safety of the
 community is compromised. The presumption remains
 that no condition or combination of conditions will
 reasonably assure appearance and the safety of the
 
 community.

 II.

 In pretrial detention cases, we employ "independent

review, tempered by a degree of deference to the

determinations made below." United States v. Tortora, 922
 

F.2d 880, 882 (1st Cir. 1990). As a practical matter, we

defer greatly to the district court's factual findings. Id.
 

at 882-83. We also carefully scrutinize the district court's

reasons, considering whether "due attention was given to all

the statutory factors." United States v. O'Brien, 895 F.2d
 

810, 816 (1st Cir. 1990). These factors are: (1) the nature

and circumstances of the offense charged; (2) the weight of

the evidence; (3) the history and characteristics of the

accused, including past conduct; and (4) the nature and

seriousness of the danger posed by the accused's release.

See 18 U.S.C. 3142(g). We give such deference to the
 

court's conclusions "as we think the care and consideration

manifested by the . . . district court warrant." O'Brien,
 

895 F.2d at 816.

 -6-

 Defendant attacks the reasoning of the district court.

First, he contends that the district court impermissibly

placed the burden on him to prove that pre-trial release was

warranted. Second, defendant argues that the district court

ignored some of the statutory factors relevant to release and

improperly weighed those factors it did consider. In

particular, defendant contends that the district court relied

almost solely on the first factor, the nature of the offense,

and failed to assess the weight of the evidence (which, he

suggests, is weak), attached too little weight to his

proffered evidence regarding the history and personal

characteristics of the defendant, and failed to articulate

any danger that defendant poses to the community.

 The government unquestionably bears the burden of proof

at a pretrial detention hearing.4 Here, the government was

aided by the presumption, set forth in 18 U.S.C. 3142(e),

that no conditions would reasonably assure defendant's

appearance and the safety of the community. The district

court's order makes it plain that it was fully cognizant that

this presumption merely shifts to the defendant the burden of

production, not the burden of persuasion. See United States
 

v. Jessup, 757 F.2d 378, 381 (1st Cir. 1985). Contrary to
 

 

4. The government must demonstrate, by clear and convincing
evidence, that the defendant's release poses a risk of danger
to the community; or, by a preponderance of the evidence,
that there is a risk of flight. See United States v.
 
Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). 
 

 -7-

the defendant's suggestion, we do not interpret the court's

statement that his "proffer of evidence is not enough to

grant him bail" to mean that the district court lost sight of

who had the burden of proof. Rather, read in context, this

remark merely indicates that the court duly considered

defendant's proffer but ultimately concluded that, even in

light of it, there was sufficient evidence to detain him.

 We add that the presumption reflects Congress's findings

that drug traffickers often have the resources and foreign

contacts to escape to other countries, and that they present

a special risk of pre-trial recidivism. See United States v.
 

Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per
 

curiam); United States v. Williams, 753 F.2d 329, 335 (4th
 

Cir. 1985). Even when, as here, a defendant has introduced

"some evidence" to rebut the presumption, the facts that gave

rise to the presumption retain evidentiary weight depending

upon how closely defendant's case resembles the highly

lucrative drug operations at the center of congressional

concern. See Palmer-Contreras, 835 F.2d at 18. Given the
 

size of the organization here, its apparent heavy volume of

business, and the evidence of cash resources, the district

court appropriately gave continuing weight to the

presumption.5

 

5. Contrary to defendant's suggestion, we do not construe
the district court's statement that the presumption "remains"
to mean that it gave conclusive weight to it.

 -8-

 We also reject defendant's argument that the district

court did not properly consider all of the relevant statutory

factors. First, we note that defendant errs in stating that

the district court failed to assess the weight of the

evidence against him. To the contrary, the district court

found that the record contains "strong indicia" of his

involvement "in a drug and firearms conspiracy and criminal

enterprise." We are similarly persuaded that the evidence

linking him to these offenses is strong. Although defendant

complains that some of the evidence against him is hearsay,

the government may utilize reliable hearsay at a detention

hearing. See United States v. Acevedo-Ramos, 755 F.2d 203,
 

207 (1st Cir. 1985). Here, the second-hand reports that

defendant is connected to, and indeed the leader of, a drug

gang are corroborated by the observations of FBI agents, the

photographs, the tape recordings, and the evidence seized

from defendant's home. 

 Second, with respect to defendant's personal history and

characteristics, we observe, as did the district court, that

he has had "prior brushes with the law." Most relevantly, at

the time of the current offense, he was on release pending

trial in state court for drug and firearm offenses. Congress

has made it clear that an "especially significant" danger to

the community is the risk that the drug network will continue

to function while defendant awaits trial. See United States
 

 -9-

v. Portes, 786 F.2d 758, 765 (7th Cir. 1985). Given
 

defendant's apparent behavior in this regard, as well as

evidence of the violent nature of the drug-related activities

and defendant's leadership role in the organization, the

district court, aided by the statutory presumption of

dangerousness, supportably found that he presented a risk to

the safety of the community if released on bail. Cf.
 

Williams, 753 F.2d at 335 (suggesting that there was clear
 

and convincing evidence that defendants were a danger to the

community where they had continued to be involved in drug

trafficking despite prior narcotics convictions). 

 Finally, although the question is closer, we are

persuaded that pretrial detention is also justified on risk-

of-flight grounds. On the one hand, defendant did proffer

evidence of strong family and community ties, offer security,

point to faithful appearances at prior court dates, and

propose a custodial arrangement. On the other hand, he faces

potentially severe penalties and apparently has access to

large amounts of cash. Thus, there is ample reason to

believe that he has the incentive and wherewithal to flee.

Moreover, it is as to close issues like this that the

deference we afford the district court's first hand

determination in bail cases comes into play.

 Affirmed.
 

 -10-