**UNITED STATES of America, Plaintiff,**

**v.**

**Jose VAZQUEZ PEREZ, Defendant.**

**Criminal No. 97–132(DRD).**

United States District Court,
D. Puerto Rico.

Aug. 29, 1997.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

The United States has requested the Court to revisit the determination of Magistrate Judge Aida M. Delgado Colón granting Defendant bail. The United States Magistrate Judge granted bail conditioned upon the posting of $175,000.00 in cash or secured properties by family members, twenty-four hour house detention in a dwelling of a family member and the wearing of an electronic device until Defendant secures employment. A hearing was held prior to setting bail on August 4, 1997.

The Magistrate Judge prior to granting bail had left open the determination of bail because there was conflicting information presented by the Defendant to Pretrial Services which had to be investigated. (See Transcript of Proceedings, August 4, 1997, p. 28.)[1] The United States immediately requested a de novo hearing on the bail determination subsequently made by the Magistrate Judge (Docket No. 75), and also requested a stay of proceedings pending the de novo hearing (Docket No. 76) which the Court granted via marginal order on August 11, 1997.[2]

A de novo hearing was held on August 18, 1997. At the hearing the United States alleged that the defense had not rebutted the presumption created by law based upon Defendant being indicted of a crime in violation of the Controlled Substances Act, 21 U.S.C.A. § 801 (1981) et seq., for which a maximum term of imprisonment of ten years or more is prescribed. Defendant, on the other hand, not only requests that bail be granted because Defendant complies with the factors to be considered for release under 18 U.S.C.A. § 3142(g) (1985), but also requests that bail be lowered so that certain properties produced may satisfy bail.

At the hearing held before the undersigned Judge both parties proceeded without any objection thereto via a proffer of evidence. The Court is required to make a de novo review of the contested Detention Order. *United States v. Tortora*, 922 F.2d 880, 883 n. 4. (1st Cir.1990).

The Bail Reform Act of 1984, 18 U.S.C.A. § 3141 et seq. (1985), sets forth at 18 U.S.C.A. § 3142(f)(1)(C), a presumption that no condition or combination of conditions

---

1. At the hearing before the Magistrate Judge both parties proceeded via proffer of evidence in order to satisfy the criteria set forth under 18 U.S.C. § 3142(g)(1),(2),(3)(A),(B),(4).

2. The United States also filed a Memorandum (Docket No. 77).

will reasonably assure the appearance of the accused as required and the safety of the community. if there is probable cause to believe that the person committed an offense for which the term of imprisonment of ten or more years is prescribed in the Controlled Substance Act, 21 U.S.C.A. §. 801. The presumption is rebuttable; the burden of persuasion, of course, remains with the government. "Nevertheless, even after a defendant has introduced some evidence to rebut the presumption, the presumption does not disappear, but rather retains evidentiary weight—the amount depending on how closely defendant's case resembles the congressional paradigm, *Jessup,* 757 F.2d at 387—to be considered along with all the other relevant factors." *United States v. Palmer–Contreras,* 835 F.2d 15, 17 (1st Cir.1987).

. In establishing the above presumption, Congress considered that "flight to avoid prosecution is particularly high among prisoners charged with major drug offenses." *U.S. Rep. No. 225,* 98th Cong.2d Sess. 20, 23–27, reprinted in 1984 U.S.Code Cong. and Ad. News 3182, 3203, 3206–3210. Congress further found a risk or "danger" to community safety, individuals accused of involvement in significant drug transactions. *United States v. Leon,* 766 F.2d 77, 81 (2nd Cir.1985).

In the instant indictment, codefendant José Vázquez Pérez is charged with conspiring to possess with the intent to distribute and distribute multi-kilogram amounts (in excess of 500 kilograms) of cocaine for which he could be sentenced up to life imprisonment. It is further proffered that the codefendant Vázquez Pérez was the leader[3] of five or more codefendants, employees of Delta Airlines, who aided and abetted him in a nine-month conspiracy (January 1995 to September 1995)[4] to transport multi-kilogram quantities of cocaine from Puerto Rico to Continental United States using, in the first instance, suitcases, and later, wooden crates. Defendant's counsel openly admitted at the hearing that the presumption is triggered by the indictment.

In order to determine whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court must consider the following factors:[5]

1. The nature and circumstances of the offense alleged, including whether the offense is a crime of violence.

2. The weight of the evidence against the person.

3. The history and characteristics of the person.

   a. Family ties, employment, community ties, past conduct, a criminal record, etc.

   b. Whether at the time of the current offense or arrest the person was on probation on parole, etc.

4. The nature and seriousness of the danger to any person or the community that could be posed by the person's release.[6]

The United States informs via proffer that two cooperating codefendants will testify, as they did before the Grand Jury, that codefendant Vázquez Pérez was the mastermind of the operation at the airport and that he created a system which evaded security at the airport utilizing his knowledge, as past Delta Airline air cargo employee, preparing false and/or fictitious airway bills expediting and accommodating said shipments through airport export procedures to the United States. The United States Attorney proffers that Defendant, utilizing his expertise as former cargo employee of Delta Airlines, was able to ship hundreds of kilograms of cocaine from January 1995 to September 1995. It is further proffered that Defendant, at the end of the conspiracy period, significantly increased the weight of the shipments by utilizing wooden crates allegedly containing auto parts shipped by a fictitious corporation which he created. (See Overt Act # 13.) Procedures which he designed were created to circumvent Delta and airport security

---

3. See Overt Acts # 14–20 of the Indictment.

4. As to the start of defendant's alleged involvement, see § 7, Overt Acts; as to the last date of alleged involvement, see § 18–20, Overt Acts.

5. 18 U.S.C. § 3142(g)(1), (2), (3)(A)–(B), (4).

6. 18 U.S.C. 3142(g)(1), (2), (3)(A)–(B), 4.

measures, according to statements provided by the cooperating codefendants which form the basis of the overt acts alleged in the complaint. The cooperating codefendants have pled guilty in another case before another District Judge of this District. On the other hand, Defendant alleges that he has a clean record, has never been convicted, has no history of violence, does not present a risk of flight, and has produced colorable evidence that he was not in Puerto Rico but on a training mission in the continental United States when one of the significant loads was intercepted on September 21, 1995.

Defendant further relies on the fact that the Pretrial Services Report recommends that he be released on bail using strict security measures as 24–hour house arrest with an electronic monitoring device until he secures employment.[7]

An analysis of the required criteria follows:

The nature and circumstances of the offense charged are both grave and serious.

Codefendant is charged with being the mastermind, supervisor, manager, and/or leader (Overt Act # 14) of a group of codefendants charged with a conspiracy to possess with intent to distribute multi-kilogram amounts of cocaine distributed through Delta Airlines. The object of the conspiracy being to transport multi-kilogram quantities of cocaine from Puerto Rico to the continental United States in order to obtain substantial monetary profits. The weight of the evidence against the Defendant consists of two cooperating codefendants who will testify as to codefendant Vázquez Pérez' supervisory/managerial mastermind and leadership role in preparing fictitious airway bills and designing a system that circumvented the luggage and cargo registration systems at the airport and the security measures established by the airline. Defendant replies, stating first that there could exist a problem of wrongful identity of Defendant. Although this may be the case, it is high improbable since the proffer made by the United States attorneys indicates that two cooperating codefendants who participated throughout the

nine-month conspiracy are to testify on the criminal participation of the Defendant Vázquez Pérez. Defendant further states that he has an alibi for one of the major loads of cocaine intercepted by the United States on September 1995. However, Defendant's absence does not preclude a plan sufficiently perfected and well designed that Defendant's personal presence was not required in all cases. Further, the craned cocaine shipments charged in the indictment began in May 1995 and were continued until September 1995. (See Overt Acts § 13–20)

The history and characteristics of the Defendant produced some family ties. Although he is married and has three children, most of the information provided at the Pretrial Services Report was provided by a girlfriend, Ms. Leamores, and his sister Axenette Nieves Pérez. Pursuant to the report, the Defendant has been employed for eleven years at Delta Airlines and has lived at the same address for five months, having lived in Puerto Rico for the past eleven years. Defendant has no prior criminal record and no prior record of violence. These criteria standing alone favor the Defendant.

As to the nature and seriousness of the danger to any person of the community that could be posed by the person released, the Court must first conclude that "danger" exists because "it is clear [that] the harm to society caused by narcotic trafficking is encompassed within Congress' definition of 'danger'." *United States v. Leon,* 766 F.2d at 81. Further, the Defendant presents a flight risk because he is charged with an offense wherein he faces a long imprisonment term (up to life) and he is a person with ample airport expertise allowing him to evade security measures. The law further imposes a presumption of flight risk in large drug trafficking cases. *United States v. Palmer–Contreras,* 835 F.2d 15, 17 (1st Cir. 1987) ("drug traffickers pose special flight risks.") The likelihood of flight increases in this particular case with the severity of the charges, the strength of the government's case, and the penalty which conviction could

---

**7.** Defendant proffered that a series of neighbors and family members were available to testify on the date of the de novo hearing as to his strong

community ties, his non-violent nature, and his reliable employment history.

bring. The evidence against the Defendant is strong; the crime is a serious drug offense, and Defendant is exposed to a life sentence. The criteria set forth under the law, 18 U.S.C.A. § 3142(g), analyzed as a whole, inescapably point toward detention.

The Court therefore concludes that pretrial detention is appropriate to "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Defendant is involved in the " 'highly lucrative' drug operations at the center of congressional concern," *United States v. Jessup*, 757 F.2d 378, 386 (1st Cir.1985), and "thus, is a person at whom the § 3142(e) presumption is aimed." *United States v. Palmer–Contreras*, 835 F.2d at 18.

Defendant is, therefore, ordered detained without bail.

IT IS SO ORDERED.