**UNITED STATES, Appellee,**

v.

**John M. DILLON, Defendant, Appellant.**

**No. 91–1583.**

United States Court of Appeals, First Circuit.

Submitted June 24, 1991.

Decided July 16, 1991.

Daniel J. O'Connell, III, Boston, Mass., Leo J. Dailey and Nolan & Dailey, on memorandum, Coventry, R.I., for defendant, appellant.

Lincoln C. Almond, U.S. Atty., and Kenneth P. Madden, Asst. U.S. Atty., on memorandum, Providence, R.I., for appellee.

Before SELYA and CYR, Circuit Judges, and BOWNES, Senior Circuit Judge.

PER CURIAM.

This is an appeal from a decision of the United States District Court for the District of Rhode Island ordering appellant, John M. Dillon, detained pending trial under 18 U.S.C. § 3142(e).

## I. BACKGROUND

On March 28, 1991, appellant and two codefendants, Thomas Murray and John Brinkman, were indicted for violations of 21 U.S.C. § 846. They were charged, in two counts, with conspiracy to possess with intent to distribute in excess of 100 kilograms of marijuana and attempt to possess with intent to distribute in excess of 100 kilograms of marijuana. A magistrate judge (magistrate) held a detention hearing, pursuant to 18 U.S.C. § 3142(e), on April 4, 1991. This hearing originally had been scheduled for April 1, but was postponed by agreement of all the parties. Appellant was represented by counsel at the hearing. However, counsel apparently did not introduce any specific evidence concern-

ing the question whether appellant presented a risk of flight or a danger to the community.[1]

The government offered the following evidence. On March 25, 1991, Murray met with undercover Drug Enforcement Administration (DEA) agents in a hotel room in Rhode Island. The DEA videotaped this meeting at which Murray agreed to purchase from the agents marijuana at $800 per pound. Transcript of Hearing dated April 4, 1991 at 5–6. During this meeting, the DEA agents showed Murray a van with 530 pounds of marijuana in it. Murray indicated that his backer had $8,000,000 at his disposal and could take as much as four tons of marijuana. *Id.*

The next day, a series of meetings were held concerning arrangements for the transfer of the marijuana. Brinkman, in attendance at one of these meetings, agreed to show one of the DEA agents $250,000 as evidence of his good faith. *Id.* at 6. It was agreed that the deal would take place on March 27. At the last meeting, held on March 26, the two DEA agents met with Murray and Brinkman. At some point, appellant appeared with a bag containing money. *Id.* at 6–7. The bag was opened for one of the DEA agents to view the money. *Id.* at 7. Appellant stated that the bag contained 40 stacks of $5,000 each. *Id.* Again, this transaction was videotaped. As they left the meeting, Murray, Brinkman and appellant were arrested. At this time, appellant still had in his possession the bag of money. *Id.* The government also proffered the evidence that appellant had two prior convictions, one for attempted larceny and one for assault and battery, in Massachusetts (where appellant resides). Other (unspecified) charges had resulted in dismissals. *Id.*

## II. DETENTION DECISIONS

### A. *The Decision of the Magistrate*

The magistrate expressed concern, in the hearing, that no conditions of release could assure that the community would be safe-

guarded against the risk that appellant and the other defendants might continue to engage in drug trafficking. The magistrate referred to the fact that any monitoring (such as phone calls or visits by pretrial service personnel) might prove difficult because appellant was not a Rhode Island resident. In his written findings, the magistrate concluded that

> [t]he [appellant] and others were recorded both visually and orally, attempting to purchase at least 500 pounds of marijuana from undercover federal agents. I find that $200,000 in cash, which represented part of the purported marijuana purchase money, was seized. I further find that the defendants represented to the undercover agents that they could take as much marijuana as supplied and that several millions of dollars in cash was available for purchasing the marijuana. The paramount concern to the Court is the safety of the community. The quantities of marijuana discussed and the amount of cash both shown to the agents and discussed heighten this concern. I find that no condition or combination of conditions, after considering all alternatives, would assure the safety of the community.

The magistrate specifically did not rely on risk of flight as a factor in the detention decision.

### B. *The Decision of the District Court Judge*

Appellant appealed the magistrate's decision on April 8. On April 12, the court held a hearing and denied the appeal, ordering appellant detained prior to trial. We do not have a transcript of this hearing. In its written order, the court applied the factors listed in § 3142(g) and determined that the offenses charged were of "considerable magnitude," that the weight of the evidence against the defendants was "strong" (consisting of taped interactions with the undercover DEA agents) and that appellant had a prior record. The court then con-

---

**1.** The transcript of the hearing indicates that appellant's attorney began to speak, but shortly afterwards the tape of the transcript became inaudible. *See* Transcript of Hearing, dated April 4, 1991 at 19–20.

cluded that appellant had not rebutted the presumption of risk of flight, especially in light of the minimum mandatory term of imprisonment of five years and the amount of money ($8,000,000) brought up in the taped conversations. It also concluded that "drug trafficking of this magnitude is, *per se*, a danger to the community...."

### C. The Decision on Appellant's Motion to Reopen the Detention Hearing

On April 23, 1991, appellant obtained new counsel. On May 6, this counsel moved to reopen the detention hearing under § 3142(f). This section provides that a "hearing may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing" and that such information is relevant to the rebuttable presumption. The information counsel wished to have considered consists of 18 affidavits from those who knew appellant, including statements from appellant's father, a police officer, persons who had employed appellant as a painter and friends of appellant and his family. All of these affidavits end with the assertion that the affiant is sure that appellant, if released, would pose no danger to the community and would return to court when ordered. There also are seven letters appended to the motion to reopen. These letters, including one from a pastor and one from appellant's former hockey coach, generally attest to appellant's good character.

Appellant's father offered to post his three-family house as security; the fair market value of the property, according to appellant's father, is $200,000. In his own affidavit, appellant offered to abide by any conditions set by the court if released, including maintaining full employment, observing travel restrictions, limiting contact with any specified persons and complying with curfews or "house arrest" terms. Counsel finally argued that, in the absence of pretrial release, appellant would be prejudiced in preparing for his defense as counsel is located in Boston.

The district court denied the motion. It rejected appellant's contention that the letters and affidavits were "information ... not known to the movant at the time of the hearing" because the letters and affidavits themselves were not in existence at the time of the hearing. Rather, the court pointed out, appellant had had sufficient time to obtain the affidavits and letters, or to arrange for the personal appearance of any witnesses. The first hearing, held on April 4, occurred nine days after appellant's arrest and the April 12 appeal was heard 17 days after arrest. We also note, in this context, that the government points out (and appellant does not dispute) that "numerous relatives and friends" of appellant had shown up for the hearing originally scheduled for April 1, 1991, lending support to the court's finding that the *information* contained in the affidavits and letters was indeed available to appellant at the time of the hearing.

### III. DISCUSSION

■ We find that the decision not to reopen the detention hearing was not in error. In a similar case, *United States v. Hare*, 873 F.2d 796 (5th Cir.1989), the Court of Appeals for the Fifth Circuit affirmed a district court's decision not to grant defendant's motion for a second evidentiary hearing on the issue of pretrial bail. The evidence the defendant desired to present in the second hearing was the testimony of his mother, sister and a friend that he had appeared in court when ordered in prior prosecutions. The court held that this was not new information within the meaning of § 3142(f). *Id.* at 799. *Compare United States v. Peralta*, 849 F.2d 625, 626–27 (D.C.Cir.1988) (*per curiam*) (upholding the reopening of a detention hearing when government sought to put in evidence of a ruling, adverse to defendant, on a suppression motion entered *after* original detention hearing).

■ As for the merits of the detention decision, appellant makes the following arguments. First, he maintains that his involvement in the drug transaction was "minimal." Specifically, appellant points

out that while the meetings between his codefendants and the DEA agents lasted several hours, he was only on the scene for "several minutes." Moreover, he asserts, he was not engaged, either directly or indirectly, in any of the negotiations concerning the purchase of the marijuana. He next points out that he is not being charged with a "narcotics" violation, has no prior record involving drug convictions and will probably receive, under the guidelines, a sentence "much less" than the ten years referred to in § 3142(e). He emphasizes the fact that he has a "minimal" criminal record and has strong ties to a community which includes persons (as represented by the affidavits and letters) who have shown support for him.

 The grand jury indictment provides probable cause to believe that appellant has committed an offense for which he may receive a sentence of imprisonment for ten or more years for violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq. *See United States v. Vargas,* 804 F.2d 157, 163 (1st Cir.1986). As a result, the rebuttable presumption of § 3142(e) applies. Thus, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community...." 18 U.S.C. § 3142(e). A defendant must produce only "some evidence" to rebut this presumption. *United States v. Jessup,* 757 F.2d 378, 384 (1st Cir.1985). When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight. *Id.; United States v. Palmer–Contreras,* 835 F.2d 15, 18 (1st Cir.1987) (*per curiam*). We independently review the lower court's detention decision, giving deference to the determinations made by the court. *United States v. O'Brien,* 895 F.2d 810, 814 (1st Cir.1990).

Although it is a close question, we decline to disturb the district court's determination that the government established by a preponderance of the evidence that no combination of conditions of release will reasonably assure appellant's presence at trial; and that, as a result, he presents a risk of flight. Appellant's circumstances are similar to those of the defendants in *United States v. Palmer–Contreras, supra.* In that case, both defendants were married, had children, had never left Puerto Rico and had no drug-related criminal records. Even though neither defendant owned property, both indicated that they had relatives who were willing to post real estate properties to secure their release. One defendant was employed with an income of $1,200 per month.

Although the defendants had presented sufficient evidence to rebut the presumption of flight, we affirmed the district court's determination that no conditions would reasonably assure the presence of the defendants at trial. 835 F.2d at 18. We noted that, despite the fact that defendants were only "mules," the organization for which they worked appeared to be one with sufficient financial resources to arrange defendants' relocation. *Id.* at 18. We also pointed out that the weight of the evidence against defendants was great because they were caught with a great deal of cocaine in their possession.

Although the substantive evidence against appellant may not be as strong as the evidence against the defendants in *Palmer–Contreras,* the government has shown that appellant appears to be part of an organization with significant financial resources. Such an organization is the kind of " 'highly lucrative' drug operation[ ] at the center of congressional concern." *United States v. Jessup,* 757 F.2d at 386. Thus, appellant is one of the individuals at whom the presumption contained in § 3142(e) is aimed.

The conditions of release proposed by appellant do not reasonably assure this court that he will appear for trial. Although appellant's father indicates that he will post his home as security for bail, it is reasonable to infer, for detention purposes, that the drug organization to which appellant belongs, should it choose to assist him in relocating, probably could absorb the

loss of $200,000 worth of security. *See Palmer–Contreras*, 835 F.2d at 18. As a result, we believe that the district court did not err in determining that appellant presented a risk of flight. As for appellant's argument that pretrial detention will hamper the preparation of his case, we note that the district court included a provision in its order that appellant be afforded "reasonable opportunity" for private consultations with his attorney.

Because we conclude that detention is required on risk of flight grounds, we need not address the issue whether appellant also presents a danger to the community. *Cf. Jessup*, 757 F.2d at 380. The judgments of the district court detaining appellant prior to trial and denying his motion to reopen the detention hearing are *affirmed*.