[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 98-1166
No. 98-1167

UNITED STATES,

Appellee,

v.

ALFRED CRAVEN AND JAMES CRAVEN,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy J. Gertner, U.S. District Judge]



Before

Torruella, Chief Judge,
Selya and Stahl, Circuit Judges.



Stephen B. Hrones and Hrones & Garrity on brief for appellant Alfred
Craven.
Henry F. Owens, III and Lane Altman & Owens LLP on brief for
appellant James Craven.
Donald K. Stern, United States Attorney, Michael D. Ricciuti and
Kimberly S. Budd, Assistant United States Attorneys, on brief for
appellee.



April 21, 1998


Per Curiam. Defendants Alfred and James Craven, two
brothers charged with an assortment of drug-related offenses,
appeal from orders of pretrial detention. After conducting
hearings over four days, the magistrate judge ("magistrate")
concluded, in a pair of comprehensive opinions, that no
combination of conditions would reasonably assure (1) the
appearance of either defendant as required or (2) the safety of
the community. See 28 U.S.C. 3142(e). The district judge
upheld the detention orders after holding further hearings,
deeming it sufficient to rely on risk-of-flight grounds alone. 
Having scrutinized the record before us, we affirm on that
basis as well. 
I.
At the outset, defendants allege that the district court,
rather than engaging in "de novo review" of the magistrate's
orders as mandated by United States v. Tortora, 922 F.2d 880,
883 n.4 (1st Cir. 1990), instead applied an overly deferential
standard of review. The court's articulated standard,
apparently drawn from a pre-Tortora district court decision
relied on by the government, is indeed somewhat ambiguous. Yet
defendants voiced no objection thereto below. (In fact, with
regard to one favorable aspect of the magistrate's decision,
Alfred Craven's attorney appeared to endorse a deferential
approach.) And the district court's standard, if erroneous at
all, was not so mistaken as to constitute prejudicial error. 
The fact that the court revoked the detention orders of two
codefendants, for example, suffices to belie any suggestion
that wholesale deference was being accorded the magistrate's
rulings. 
The issue is largely beside the point in any event. The
underlying facts are virtually undisputed. What defendants
have objected to is the magistrate's ultimate finding, based on
those facts, that detention was warranted. There is no
indication that the district court deemed such a legal
conclusion to be subject to anything other than de novo review.
II.
Having conducted an independent review tempered by a due
degree of deference, see, e.g., United States v. Patriarca, 948
F.2d 789, 791 (1st Cir. 1991); Tortora, 922 F.2d at 882-83, we
decline to disturb the lower court's conclusion that the
detention of these defendants is warranted on risk-of-flight
grounds. The Craven brothers are two of 21 individuals charged
with participating in a large-scale marijuana distribution
ring, involving the transport of well over 1000 kilograms of
marijuana from California to Massachusetts and the transfer of
millions of dollars in proceeds back to California. Alfred
Craven is said to have been one of the ringleaders; his younger
brother James allegedly served in a somewhat subordinate, but
nonetheless supervisory capacity. At least from a preliminary
standpoint, the evidence against each appears to be strong. 
Both are facing lengthy prison terms. Neither has close ties
to the area; while the two brothers were raised in
Massachusetts, they have resided in California for a number of
years. Neither owns property in either state. Their criminal
records, while relatively minor, each include one or more
defaults. And each brother is faced with charges that trigger
the rebuttable presumption of risk of flight. See 18 U.S.C. 
3142(e).
This last factor is of considerable force here. The
statutory presumption, even when rebutted, retains particular
weight where, as in the instant case, defendants closely
correspond to the congressional paradigm. See, e.g., United
States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) (per
curiam). The presumption "reflects Congress' findings that
drug traffickers often have the resources and foreign contacts
to escape to other countries" and therefore "pose special
flight risks." United States v. Palmer-Contreras, 835 F.2d 15,
17 (1st Cir. 1987) (per curiam). Defendants' evidentiary
proffers, even if deemed sufficient to satisfy their burden of
production, fall short of demonstrating that "what is true in
general [regarding risk of flight by drug traffickers] is not
true in the particular case." United States v. Jessup, 757
F.2d 378, 384 (1st Cir. 1985). To the contrary, a number of
factors--including defendants' ties to southern California, the
sophisticated nature of the alleged drug ring, the large
amounts of money supposedly involved, and the number of alleged
participants--indicate that Congress' general concerns are
applicable here. Moreover, Alfred Craven once reportedly told
an informant that he would flee to Mexico or South America
rather than face criminal charges. 
Defendants' countervailing arguments, four of which we
shall mention, do not call for a different result. Alfred
Craven alleges that, five hours before his own arrest, he
learned of his brother's arrest but did not take flight. Yet
he could not have known of the charges he would be facing (the
indictment having been sealed), and his inaction during such a
brief period of time is otherwise not particularly telling. 
Cf. United States v. King, 849 F.2d 485, 488-89 (11th Cir.
1988) (affirming detention order in face of argument that
defendant knew of pending indictment six months before it was
returned). Alfred also contends that his ability to flee is
constrained by the presence in Massachusetts of his girlfriend
and their young child, along with his mother. Yet all three
were living with him in California and only moved east
following his arrest. James Craven observes that he never
defaulted during the 22 months (between 1994 and 1996) that he
was free on bail pending disposition of related state drug
charges. Yet the penalties he is now facing are substantially
higher, providing a greater incentive to flee. 
Finally, both defendants emphasize that their elderly
grandmother is willing to post over $100,000 of equity in her
Massachusetts home as security. Yet the drug ring here is
alleged to have handled millions of dollars; one of the counts
in the indictment seeks forfeiture of "at least $3 million"
from Alfred Craven alone. One can therefore conclude, as we
noted in a similar case, that "[t]he forfeiture of $100,000
worth of property would have little financial impact on such an
organization." Palmer-Contreras, 835 F.2d at 18; accord, e.g.,
Dillon, 938 F.2d at 1416-17 (observing that drug organization
"probably could absorb the loss of $200,000 worth of
security").
III.
For these reasons, we conclude that pretrial detention of
Alfred and James Craven is warranted on risk-of-flight grounds. 
We therefore need not address whether detention would also be
appropriate on the basis of dangerousness. See, e.g., id. at
1417.
The motions for oral argument are denied, and the orders
of pretrial detention are affirmed.