USCA1 Opinion

 

 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 ____________________

No. 98-1166
No. 98-1167

 UNITED STATES,

 Appellee,

 v.

 ALFRED CRAVEN AND JAMES CRAVEN,

 Defendants, Appellants.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Nancy J. Gertner, U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,
 Selya and Stahl, Circuit Judges.

 ____________________

 Stephen B. Hrones and Hrones & Garrity on brief for appellant Alfred
Craven.
 Henry F. Owens, III and Lane Altman & Owens LLP on brief for
appellant James Craven.
 Donald K. Stern, United States Attorney, Michael D. Ricciuti and
Kimberly S. Budd, Assistant United States Attorneys, on brief for
appellee.

 ____________________

 April 21, 1998
 ____________________

 Per Curiam. Defendants Alfred and James Craven, two
 brothers charged with an assortment of drug-related offenses,
 appeal from orders of pretrial detention. After conducting
 hearings over four days, the magistrate judge ("magistrate")
 concluded, in a pair of comprehensive opinions, that no
 combination of conditions would reasonably assure (1) the
 appearance of either defendant as required or (2) the safety of
 the community. See 28 U.S.C. 3142(e). The district judge
 upheld the detention orders after holding further hearings,
 deeming it sufficient to rely on risk-of-flight grounds alone. 
 Having scrutinized the record before us, we affirm on that
 basis as well. 
 I.
 At the outset, defendants allege that the district court,
 rather than engaging in "de novo review" of the magistrate's
 orders as mandated by United States v. Tortora, 922 F.2d 880,
 883 n.4 (1st Cir. 1990), instead applied an overly deferential
 standard of review. The court's articulated standard,
 apparently drawn from a pre-Tortora district court decision
 relied on by the government, is indeed somewhat ambiguous. Yet
 defendants voiced no objection thereto below. (In fact, with
 regard to one favorable aspect of the magistrate's decision,
 Alfred Craven's attorney appeared to endorse a deferential
 approach.) And the district court's standard, if erroneous at
 all, was not so mistaken as to constitute prejudicial error. 
 The fact that the court revoked the detention orders of two
 codefendants, for example, suffices to belie any suggestion
 that wholesale deference was being accorded the magistrate's
 rulings. 
 The issue is largely beside the point in any event. The
 underlying facts are virtually undisputed. What defendants
 have objected to is the magistrate's ultimate finding, based on
 those facts, that detention was warranted. There is no
 indication that the district court deemed such a legal
 conclusion to be subject to anything other than de novo review.
 II.
 Having conducted an independent review tempered by a due
 degree of deference, see, e.g., United States v. Patriarca, 948
 F.2d 789, 791 (1st Cir. 1991); Tortora, 922 F.2d at 882-83, we
 decline to disturb the lower court's conclusion that the
 detention of these defendants is warranted on risk-of-flight
 grounds. The Craven brothers are two of 21 individuals charged
 with participating in a large-scale marijuana distribution
 ring, involving the transport of well over 1000 kilograms of
 marijuana from California to Massachusetts and the transfer of
 millions of dollars in proceeds back to California. Alfred
 Craven is said to have been one of the ringleaders; his younger
 brother James allegedly served in a somewhat subordinate, but
 nonetheless supervisory capacity. At least from a preliminary
 standpoint, the evidence against each appears to be strong. 
 Both are facing lengthy prison terms. Neither has close ties
 to the area; while the two brothers were raised in
 Massachusetts, they have resided in California for a number of
 years. Neither owns property in either state. Their criminal
 records, while relatively minor, each include one or more
 defaults. And each brother is faced with charges that trigger
 the rebuttable presumption of risk of flight. See 18 U.S.C. 
 3142(e).
 This last factor is of considerable force here. The
 statutory presumption, even when rebutted, retains particular
 weight where, as in the instant case, defendants closely
 correspond to the congressional paradigm. See, e.g., United
 States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) (per
 curiam). The presumption "reflects Congress' findings that
 drug traffickers often have the resources and foreign contacts
 to escape to other countries" and therefore "pose special
 flight risks." United States v. Palmer-Contreras, 835 F.2d 15,
 17 (1st Cir. 1987) (per curiam). Defendants' evidentiary
 proffers, even if deemed sufficient to satisfy their burden of
 production, fall short of demonstrating that "what is true in
 general [regarding risk of flight by drug traffickers] is not
 true in the particular case." United States v. Jessup, 757
 F.2d 378, 384 (1st Cir. 1985). To the contrary, a number of
 factors--including defendants' ties to southern California, the
 sophisticated nature of the alleged drug ring, the large
 amounts of money supposedly involved, and the number of alleged
 participants--indicate that Congress' general concerns are
 applicable here. Moreover, Alfred Craven once reportedly told
 an informant that he would flee to Mexico or South America
 rather than face criminal charges. 
 Defendants' countervailing arguments, four of which we
 shall mention, do not call for a different result. Alfred
 Craven alleges that, five hours before his own arrest, he
 learned of his brother's arrest but did not take flight. Yet
 he could not have known of the charges he would be facing (the
 indictment having been sealed), and his inaction during such a
 brief period of time is otherwise not particularly telling. 
 Cf. United States v. King, 849 F.2d 485, 488-89 (11th Cir.
 1988) (affirming detention order in face of argument that
 defendant knew of pending indictment six months before it was
 returned). Alfred also contends that his ability to flee is
 constrained by the presence in Massachusetts of his girlfriend
 and their young child, along with his mother. Yet all three
 were living with him in California and only moved east
 following his arrest. James Craven observes that he never
 defaulted during the 22 months (between 1994 and 1996) that he
 was free on bail pending disposition of related state drug
 charges. Yet the penalties he is now facing are substantially
 higher, providing a greater incentive to flee. 
 Finally, both defendants emphasize that their elderly
 grandmother is willing to post over $100,000 of equity in her
 Massachusetts home as security. Yet the drug ring here is
 alleged to have handled millions of dollars; one of the counts
 in the indictment seeks forfeiture of "at least $3 million"
 from Alfred Craven alone. One can therefore conclude, as we
 noted in a similar case, that "[t]he forfeiture of $100,000
 worth of property would have little financial impact on such an
 organization." Palmer-Contreras, 835 F.2d at 18; accord, e.g.,
 Dillon, 938 F.2d at 1416-17 (observing that drug organization
 "probably could absorb the loss of $200,000 worth of
 security").
 III.
 For these reasons, we conclude that pretrial detention of
 Alfred and James Craven is warranted on risk-of-flight grounds. 
 We therefore need not address whether detention would also be
 appropriate on the basis of dangerousness. See, e.g., id. at
 1417.
 The motions for oral argument are denied, and the orders
 of pretrial detention are affirmed.