DANIEL R. DOMINGUEZ, United States Senior District Judge
Pending before the Court are: (a) defendant Joel Ortiz Quiles' Motion for De Novo Bail Hearing filed at Docket No. 63; and (b) the United States' Opposition to Ortiz Quiles' Motion for De Novo Bail Hearing (D.E.63) filed at Docket No. 67. For the reasons set forth below, (a) defendant Ortiz-Quiles' Motion for De Novo Bail Hearing is granted, notwithstanding a late request; and (b) defendant's request to be released on bail pending trial, is denied.
Introduction
The issue pending before the Court is twofold: (a) whether to grant the defendant's request for a timely de novo bail hearing after the original bail determination made by the Magistrate Judge; and, (b) whether the defendant's request on the merits to be released on bail is warranted under the law.
*239 Factual and Procedural Background
On November 16, 2017, a Complaint was filed against the defendant Joel Ortiz-Quiles ("Ortiz-Quiles" or the "defendant"). The record shows that Ortiz-Quiles was arrested on November 16, 2017, and the Initial Appearance was also held on November 16, 2017 before the United States Magistrate Judge Bruce J. McGiverin (hereinafter "U.S. Magistrate Judge McGiverin"). At that time, U.S. Magistrate Judge McGiverin ordered the defendant Joel Ortiz-Quiles temporarily detained. See Docket No. 5.
A Superseding Indictment followed on November 20, 2017, Docket No. 45. Defendant Ortiz-Quiles was brought again before U.S. Magistrate Judge McGiverin for the arraignment and detention hearing on November 21, 2017. Defendant Ortiz-Quiles was charged with four counts, to wit: Count One, "Conspiracy to commit an offense against the United States," 18 U.S.C. § 371 (Ortiz-Quiles met with other co-conspirators met to plan the bank robbery); Count Two, "Bank Robbery," 18 U.S.C. §§ 2113(a) and 2113(d), and Pinkerton v. United States , 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) ("defendants, aiding and abetting one another ... by force, violence and intimidation ... did take from the person or presence of another, namely, employees of the Banco Popular branch located at 301 Avenue de Diego, San Juan, Puerto Rico, [an amount] in excess of $17,000, money belonging to and in the care, custody, control, management and possession of Banco Popular, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, and, in committing such offense, the defendants did put in jeopardy the life of other persons by the use of dangerous weapons"); Count Three, "Carry, Use, and Discharge of a Firearm during and in Relation to a Crime of Violence," 18 U.S.A. § 924(c)(1)(A)(iii) ("defendants, aiding and abetting one another ... knowingly used, carried, and discharged a 9mm caliber firearm of unknown make and model during and in relation to crimes of violence, as charged in Counts One and Two of this indictment"); Count Four, "Carry, Use, and Brandish of a Firearm during and in relation to a Crime of Violence," 18 U.S.A. § 924(c)(1)(A)(ii) ("defendants, aiding and abetting one another and others .... knowingly used, carried, and brandished a 9mm caliber firearm of unknown make and model during and in relation to crimes of violence, as charged in Counts One and Two of this Indictment").
On November 21, 2017, at the end of the hearing, U.S. Magistrate Judge McGiverin took under advisement the issue of whether defendant Ortiz-Quiles should be detained without bail. The United States moved for the detention without bail, while the defense counsel argued favoring bail. The record shows that, on the 21st of November of 2017, U.S. Magistrate Judge McGiverin held defendant Ortiz-Quiles detained without bail, at Docket No. 51, on the grounds that the defendant failed to rebut the presumption established by 18 U.S.C. § 3142(e)(3), that is, that "no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses: (2) an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332(b) ;" ... "The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted." See Order of Detention Pending Trial , issued on November 21, 2017 ("Order of Detention "), entered at Docket No. 51.
*240 A review of the Order of Detention issued by the U.S. Magistrate Judge McGiverin included additional findings which further warranted the defendant's detention, i.e. , "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community;" ... "the weight of the evidence against the defendant is strong;" the defendant is "subject to a lengthy period of incarceration if convicted;" the defendant has a "prior criminal record;" as well as a "history of alcohol or substance abuse." See Docket No. 51, page 2.
On December 17, 2017, defendant Ortiz-Quiles filed a Motion for De Novo Bail Hearing filed at Docket No. 63 on the grounds that, the defendant "Ortiz-Quiles' participation was limited to being present in the planning meetings, working as one of the 'lookouts' during the robbery and cleaning the security dye on the stolen money." See Docket No. 63, at page 2. Defendant Ortiz-Quiles also argued that The Bail Reform Act, 18 U.S.C. §§ 3141, et seq., provides a general proposition that the defendant may be released on bail or on its own recognizance "unless the judicial officer determines that such a release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). See Docket No. 63, at page 3. Defendant Ortiz-Quiles argued that only a serious risk of flight or danger to the community warrants the denial of bail. Lastly, defendant informs the Court that at the time of his arrest he had been working with the Federal Emergency Management Administration, and his brother has expressed his "willingness to act as third party custodian." See Docket No. 63, at page 4.
On January 12, 2018, the United States filed an Opposition to Ortiz-Quiles' Motion for the Novo Detention/Bail Hearing (D.E. 63) , filed at Docket No. 67, and moved for the detention of Ortiz-Quiles without bail on the grounds that the defendant represented a serious risk of flight and danger to the community, as well as a "serious risk of obstruction, injury or threats to a prospective witness ...." See Docket No. 67.
The Government further argued that the defendant failed to timely appeal the Order of Detention of November 21, 2017, as provided by Rule 59(a) of the Federal Rules of Criminal Procedure ("Fed.R.Crim.P."), that is, "within 14 days after being served with a copy of a written order or after the oral order is stated on the record, or at some other time the court sets." See Docket No. 67, at page 4. Hence, the defendant had until December 5, 2017 to appeal the Order of Detention of November 21, 2017. The Court held a De Novo hearing on December 17, 2017, that is, 26 days after the entry of the Order of Detention of November 21, 2017.
The defendant filed the motion for a de novo hearing apparently late, that is, 26 days after the entry of the Order of Detention of November 21, 2017, as to defendant Joel Ortiz-Quiles, Docket No. 51. The normal period would have been 14 days after the entry of the Order of Detention by the U.S. Magistrate Judge McGiverin. The Court understands that the Chief Judge of the District of Puerto Rico entered various orders as to extensions of time triggered by the passing of Hurricanes Irma and Maria, which may have confused counsel as to when the period began for the filing of his motion. The Court understands that the initial period was extended to cover the extra days. If not the Court recognizes that an equitable tolling exists, as to the eight days of lateness (counting the holidays). Hence, because the Chief Judge of the District Court issued various interim orders as to Hurricanes Irma and Maria, *241 this Court will entertain the case on the merits, as counsel may not have been informed as to all the orders. The Court is cognizant that there were professional offices which, as of November 2017, still remained without electricity and/or communication services, up to January 2018. Hence, the Court has divided the first issuance favoring the defendant Ortiz-Quiles. Notwithstanding, the Court held a De Novo hearing on January 26, 2018, and received proffered evidence from both the United States and the defendant Ortiz-Quiles, and the Court will decide the issue on the merits.
Applicable Law and Discussion
The Bail Reform Act- 18 U.S.C. §§ 3141 et seq.
The Bail Reform Act of 1986, as amended, 18 U.S.C. §§ 3141 et seq. governs the conditions of release and detention of a person following an arrest. Section 3142(f) specifically provides the conditions or combination of conditions to be considered by the judicial officer, as well as the parties, particularly the attorneys for the United States, when the person under arrest is brought before the judicial officer, in order to determine whether the person under arrest is entitled to be released on bail or whether detention without bail pending trial is warranted.
After holding the detention hearing, the judicial officer shall determine "whether any condition or combination of conditions set forth in subsection (c) of this section [3142] will reasonably assure the appearance of such person as required and the safety of any other person and the community ... (1)(A) crime of violence ... for which a maximum term of imprisonment of 10 years or more is prescribed; (B) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act ... (C) ... (D) ... (E) ... or, (2) upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves-(A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, ir intimidate, a prospective witness or juror."
Section 3142(g) specifies the factors to be considered by the judicial officer when determining the conditions of release involving a reasonably assurance as to the appearance of the person or whether detention without bail is indeed warranted, as the defendant constitutes a dangerous risk to the community. The factors to be considered by the judicial officer are set forth in Section 3142(g) :
(1) "the nature and the circumstances of the offense charged, including whether the offense is a crime of violence ... Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;"
(2) "the weight of the evidence against the person;"
(3) "the history and characteristics of the person, including-
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law;" and
(4) "the nature and seriousness of the danger to any person or the community *242 that would be posed by the person's release....."
Discussion
On January 26, 2018, the Court held a hearing on defendant's Motion for De Novo Bail Hearing , Docket No. 73, wherein the defendant Ortiz-Quiles appeared under custody. Hence, the Court must examine the determination of the Honorable Magistrate Judge de novo under United States v. Tortora , 922 F.2d 880, 883, n.4 (1st Cir.1990). The United States was represented by AUSA Juan Carlos Reyes; the defendant was represented by counsel Victor P. Miranda. At the outset, the United States and the defendant Ortiz-Quiles admitted that the United States has the burden of persuasion, and the defendant has the burden of production, as there are at least two counts charged under 18 U.S.C. § 924(c), which entails a sentence of ten years or more each, to wit, wherein defendants aiding and abetting one another, knowingly used, carried and discharged a 9mm caliber firearm during a bank robbery. Moreover, the defendants also brandished a 9mm caliber firearm, as charged in the Superseding Indictment in Counts Three and Four. See Docket No. 45. Hence, the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the accused as required, the safety of community, and the fact that there is probable cause via the indictment under the law charged, meets the standard in favor of detention prior to trial. See United States v. Dillon , 938 F.2d 1412 (1st Cir.1994), and U.S. v. O'Brien , 895 F.2d 810, 814-815 (1st Cir. 1990).
When the United States and the defendants are presenting evidence as to the factors of dangerousness to the community, and risk of flight, they shall consider the following factors: (a) nature and circumstances of the offense; (b) weight of the evidence; (c) history and characteristics of the accused, as well as the nature and gravity of the danger posed by the defendant's release. See United States v. Patriarca , 948 F.2d 789 (1st Cir.1991).
Both parties agreed that the presumption of detention was present in the instant case. Based upon the evidence presented by the parties, the Court will determine whether the defendant will remain detained or whether bail is warranted, depending on whether the presumptions provided by 18 U.S.C. §§ 3142(e)(3) and 3142(g) have been met and/or whether the defendant has surpassed the rebuttable presumption.
The Court proceeded via proffer of the parties as authorized by United States v. Acevedo-Ramos , 755 F.2d 203, 208 (1st Cir.1995)[1] (authorizing proceedings in bail hearings via proffer citing the House Judiciary Committee, H.R. Rep. No. 907, 91st Congress, 2d Session 182, 184 (1970). The bank robbery crime, 18 U.S.C. § 2113(a) and § 2113(d) both carry maximum sentence beyond ten years plus a weapon charge for brandishing a weapon during a *243 crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), which carries a concurrent sentence of not less than 7 years.
In the instant case, defendant Ortiz-Quiles admitted at the outset of the hearing to the Court that he participated in the conspiracy,[2] and that defendant had issued a statement at the time of his arrest. The statements are currently being challenged through a pending motion to suppress. The Court, however, indicated that the main issue as to defendant Ortiz-Quiles is whether he had prior knowledge that a bank robbery was to take place, and that weapons were to be used during the robbery. Mr. Miranda argued that albeit Ortiz-Quiles knew of the conspiracy of the bank robbery, he did not participate in the robbery of the bank or carried a weapon, and that Ortiz-Quiles was merely a "lookout."
The Court, however, was firm as to not granting bail to Ortiz-Quiles when the defendant is charged with being part of a conspiracy involving a bank robbery, "whose deposits were then insured by the Federal Deposit Insurance Corporation, and, in committing such offense, the defendants did put in jeopardy the life of other persons by the use of dangerous weapons." See Second Superseding Indictment, Count Two, at Docket No. 84.[3] Defendant Ortiz-Quiles was also indicted for being part of a conspiracy involving weapons which were used and brandished at and during the bank robbery, specifically a 9mm caliber firearm, where a shot was fired, and a weapon was used placing the life of others in jeopardy. See Second Superseding Indictment, Counts One and Four, at Docket No. 84.
Further, defendant Ortiz-Quiles was present at various meetings to plan the robbery, the surveillance of the bank, and a participant as to the surveillance positions. Moreover, the defendant Ortiz-Quiles participated in the meetings held prior, during, and after the bank robbery of the Banco Popular branch located at 301 Avenue De Diego, San Juan, Puerto Rico, in which an amount in excess of $17,000 were "robbed by force, violence, and intimidation" from the bank, on or about June 2, 2017. See Second Superseding Indictment, Counts One and Two, at Docket No. 84.
The United States has the burden to show the Court that the defendant's evidence has failed to rebut the presumption under 18 U.S.C. § 3142(e)(3), that is, "that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses: ... (2) and offense under 18 U.S.C. §§ 924(c), 956(a), or 2232b ..." See Order of Detention , Docket No. 51, at page 2. The U.S. Magistrate Judge McGiverin further found that although "the defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors and the *244 other factor discussed below, detention is warranted."Id.
As to the defendant's statement issued at the time of his arrest, defendant's counsel informed that the statement is problematic and is the subject of a motion to suppress. Defense counsel also informed the Court that defendant's prior criminal history consists of a misdemeanor in local court for illegal appropriation and was fined $100.00 per offense. Another argument made by the defense is the proposition that being the driver of the runaway car does not make the defendant a risk of flight or a danger to the community. The Court again stated that the defendant's participation in the robbery conspiracy was much more than being merely a driver, and further that the defendant knew or should have known that weapons were going to be used at the robbery, and in the gateway car, as Ortiz-Quiles was present at the planning meetings, and specifically participated in the planning of the surveillance plan together with all the defendants, in preparation of the bank robbery. See Second Superseding Indictment, Count One, at Docket No. 84. Furthermore, the fact that there were weapons involved in the bank robbery meets the presumption that the defendant constitutes a danger to the community.
The defense insisted that the Ortiz-Quiles was entitled to bail pending trial, as he could be released with proper supervision, drug treatment, the imposition of a curfew, under the custody of defendant's brother who is available and willing to act as a third party custodian. The Court inquired as to certain facts of defendant's brother, such as, whether the brother of Ortiz-Quiles holds a full time job, and, thus could not be an effective custodian. Defense counsel argued that the use of an electronic monitoring device will resolve these issues. But the Court repeated that monitoring devices have not been totally effective and, further, the risk of flight and of dangerousness to the community is insufficient by merely using a monitoring device. See United States v. Tortora , 922 F.2d at 886-887. Furthermore, the Court, citing United States v. Patriarca , 948 F.2d at 793, reminded the defendant that these factors to be examined by the Court are met by the civil preponderance of the evidence, as opposed to the criminal standard of evidence beyond reasonable doubt.[4]
The Court stressed on the details of the bank robbery; whether weapons were used; whether any shots were fired at a well recognized bank, and the danger posed by the use of the weapon. The United States also argued that even if the presumption has been rebutted in terms of the burden of production, "the presumption does not disappear but rather retains evidentiary weight." United States v. Jessup , 757 F.2d 378, 387 (1st Cir.1985).
The United States further argued that the defendant Ortiz-Quiles failed to rebut the presumption of dangerousness and risk of flight, inasmuch as the evidence presented to the U.S. Magistrate Judge McGiverin shows that the crime and the facts are serious, dangerous and violent. Averring that the conspiracy constituted a carefully planned crime, and was not actually effectuated until the defendants felt comfortable to proceed with the bank robbery as planned and prepared, as has been alleged in the overt conspiracy acts 1-8. See Second Superseding Indictment, Count One, at Docket No. 84. Defendant Ortiz-Quiles participated in the following overt acts: (1) planning; (3) surveillance of the target bank; (4) one month later after the surveillance, the defendant participated in setting positions around the target bank to *245 lookout for the potential presence of law enforcement agents immediately prior to, during, and after the bank robbery; and (8) after the robbery to the bank, on June 2, 2017, defendant met with other defendants to divide the money from bank-robbery proceeds amongst themselves. See Second Superseding Indictment, Count One, at Docket No. 84. The defendants met several times on or about May 2017 to plan the bank robbery, including recruiting other individuals; designing and carrying out a surveillance plan; how to face the law enforcement agents; use of weapons during the bank robbery operation, amongst others, which was finally carried out, on or about June 2, 2017. See Second Superseding Indictment, Counts One and Two, Docket No. 84.
The dangerousness of the conspiracy shows that each defendant had a role in the bank robbery, including the use of weapons to effectively reach the objective of stealing money in a bank. Hence, not all of the defendants were to be assigned inside the bank, as defendants assigned to the surveillance role; others to lookout for law enforcement agents, thus, some of the defendants had to remain outside of the premises of the targeted bank, which was, the Banco Popular Branch located at 301 Avenue De Diego, San Juan, Puerto Rico; others were used to conceal the illegitimate nature of the bank robbery proceeds (cleaning any identification marks on the stolen currency prepared by the bank in cases of robbery); and, others to obtain disguises and the weapons to be used during the bank robbery.
The Court must review the matter of the appeal de novo form. United States v. Tortora , 922 F.2d at 883, n.4. The Court, however, is not required to hold a hearing as stated by district and/or circuit courts to comply with the de novo review. See United States v. Koenig , 912 F.2d 1190, 1195 (9th Cir.1990). As stated infra , the Court may proceed, at its discretion, via proffer of evidence. See United States v. Acevedo-Ramos , 755 F.2d at 208. Because the parties have accepted, the matters at hand are to be examined under the rebuttable presumption of not granting bail to the defendant under 18 U.S.C. § 3142(e)(3)(B) and (f)(1)(A), (B), as well as under the weapons charge, 18 U.S.C. § 924(c). Hence, production of the evidence relating to the rebuttable presumption belongs to the defendant. The ultimate burden of persuasion belongs to the United States. But "the presumption does not disappear." United States v. Jessup , 757 F.2d at 387. The presumption has a significant "practical effect." Id. 757 F.2d at 384. The presumption does not shift the burden of persuasion to the defendant, because the Government retains the burden of throughout. Id. 757 F.2d at 380-384. The presumption created is that of "flight risk" and "danger to the community." Jessup , 757 F.2d at 381. Defendant must present "some evidence" to the contrary. United States v. O'Brien , 895 F.2d 810, 815 (1st Cir.1990), "conflicting evidence must be produced by defendant" and then the Court will determine on which side the evidence preponderates. Jessup , 757 F.2d at 383. The Court must examine the criteria set forth under the law at 18 U.S.C. § 3142(g)(1)(2)(3)(4). The Court proceeds in seriatem fashion to examine each criteria:
(1) The nature and circumstances of an offense . The Court finds that the crime involves, i.e. an armed bank robbery conspiracy, well planned and using weapons wherein one shot was fired to draw the attention of the public. The offense constitutes a serious and dangerous crime of violence as a weapon was brandished and fired during the heist.
(2) The weight of the evidence . As to this criteria, the weight of the evidence is *246 overwhelming as the defendant apparently has provided statements to the government which proves the operation of the robbery occurred, as well as defendants' participation in the same. Notwithstanding, the defendants' participation, and Ortiz-Quiles' statements under scrutiny of a motion to suppress, is verified by others. However, the Court clarifies that the other circuits have determined that the weight of the evidence is the "least important criteria."[5] The defendant Ortiz-Quiles participated in Over Act One, meetings with other defendants to "plan the bank robbery." The defendant also performed on a separate day, surveillance, Overt Act Two; participated in the set-up of lookouts to observe "the presence of law enforcement personnel immediately prior, during and after the bank robbery," Overt Act Three. Finally, the defendant admitted that he was on the getaway car, and that his participation is, therefore, only as the driver of the getaway car. The defendant also participated in the distribution of the "bank-robbery proceeds amongst themselves." See Overt Act number 8, Count One at Docket No. 84. But the government is not required to prove a determination of guilt at pretrial stage. See United States v. Gebro , 948 F.2d 1118, 1121( 9th Cir.1991), citing United States v. Winsor , 785 F.2d 755, 759 (9th Cir.1986). See also United States v. Stone , 608 F.3d 939, 948 (6th Cir.2010) (standing for the proposition emphasizing the dangerousness, citing Gebro , Id. , but not stating "least important criteria"). Lastly, the Court may review sua sponte the Order of Detention issued by U.S. Magistrate Judge McGiverin, at Docket No. 51. In Thomas v. Arn , 474 U.S. 140, 154, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), the Supreme Court held:
The district judge has jurisdiction over the case at all times . He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask . Moreover, while the statute does not require the judge to review an issuede novo if no objections are filed, it does not preclude further review by the district judgesua sponte or at the request of a party, under ade novo or any other standard . (Emphasis ours).
(3) The history and history and characteristics of the accused . The defendant had only one misdemeanor registered. The original accusation finished on a fine of $100.00. Although the misdemeanor was originally filed in the Puerto Rico Superior Court, which only receives criminal filings that constitute a felony, the case ended with two fines of $100.00 each for the illegal appropriations of the defendant. The Court, however, can only consider the defendant's prior case as a misdemeanor. The defendant was not married at the age of twenty-two (22) when he was arrested, but he had an infant named Yashira Joanialis, product of his relationship with his companion co-defendant Yashira Marie Vega-Carrillo. Defendant Ortiz-Quiles has been a lifelong resident of Nemesio Canales Public Housing Building Project in San Juan, Puerto Rico, except for one year when defendant Ortiz-Quiles lived for one year with a maternal aunt in the State of Rhode Island.
Defendant Ortiz-Quiles did not have a good relation with his father after he divorced his mother. He had an excellent relationship with his mother. His father *247 stated to the pretrial officer that the defendant did not know most of his eleven half-brothers. The defendant's father was drug dependent, and now a patient of methadone (information provided in the pretrial report). The defendant knows his two maternal siblings. The defendant has worked hard to obtain his GED at the Public Housing Educational Module. He does not understand the English language. At age 17, the defendant worked one month. Recently, the defendant was employed for a short time with FEMA relating to the aftermath of Hurricanes Irma and Maria in the Fall of 2017 and/or also a short time with Expo Caribe.
Finally, there is one aspect that is worrisome to the Court for bail purposes, which is that the defendant was in charge of the cleaning of the money and participated in the division of the stolen bank robbery proceeds, in excess of seventeen thousands dollars divided between six defendants, including the former defendant co-living defendant Ortiz-Quiles. None of the parties have addressed the issue of the recovery of the moneys from the bank robbery, as the moneys were divided on the same day of the robbery, that is, June 2, 2017, and the defendant was not arrested until November 16, 2017. See Complaint filed on November 16, 2017, and the Superseding Indictment filed on November 20, 2017, at Docket Entries No. 1 and 45. The bank robbery and the division of the bank robbery proceeds occurred on June 2, 2017. The Court then for purposes of the bail must consider that the defendant Ortiz-Quiles received his proceeds at that time. See Second Superseding Indictment, Counts One, Two, Three, Four, at Docket No. 84.
Defendant Ortiz-Quiles is also a habitual drug user, as alleged by the United States and included in the preliminary bail probation report, at the first appearance of the defendant.
(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release . The Court first finds that the defendant was not merely a surveillance person. As stated above, defendant Ortiz-Quiles participated in at least four important events. Furthermore, on or around May 2017, the defendant Ortiz-Quiles participated in at least four of the Overt Acts described in the Second Superseding Indictment at Docket No. 84.
Finally as to the "risk of flight," on June 2, 2017, defendant Ortiz-Quiles participated in the distribution of the proceeds, Overt Acts number 8, Count One of the Second Superseding Indictment, Docket No. 84. As to the "danger to the community," the defendant participated in the surveillance of the target bank, Overt Acts number 3, Count One of the Second Superseding Indictment, Docket No. 84; the planning to set up "lookouts" in or around the premises of the target bank, to check for the presence of law enforcement in the bank prior to, during and after the bank robbery, as stated in Overt Act number 4, Count One of the Second Superseding Indictment, Docket No. 84; as well as, defendant's participation as the driver of the gateway car after the bank robbery, as proffered evidence by the United States at the de novo hearing held on January 26, 2018. Most critical was that the persons that entered the bank were persons that were armed during the bank robbery. One of the individuals, in order to freeze all clients and employees at the bank, detonated a bullet shot. The above stated facts means that the defendant Ortiz-Quiles participated in at least four overt acts, and knew that there were persons that were armed in the getaway car. Moreover, the defendant also knew that part of the acts, including firing a shot to freeze the customers were known acts under the conspiracy of robbing the bank.
*248 All of the above indicates that the defendant knew that a bank was to be a target of a robbery with weapons, including the necessity of a gateway car for the two persons, one of which definitely had a weapon upon exiting the bank.
Conclusion
The crime having been a crime to rob a bank even though the defendant Ortiz-Quiles remained as a "look out," knowing the dangers of robbing a bank and participating in four critical overt acts, the Court considers that the defendant constitutes a danger to the community, as the defendant participated in a crime of violence. The Court, therefore, finds that Ortiz-Quiles is a danger to the community, under the standard of "clear and convincing evidence," as established in United States v. Salerno , 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).
Further, the defendant Ortiz-Quiles also constitutes a "flight risk." The defendant previously did not have a close relationship with his father nor with his eleven half-brothers. He did have a good relationship with two brothers procreated by his father and mother. Mr. Ortiz-Quiles enjoys an excellent relationship with his Mother. He also has a good relation with his common law wife, co-defendant Yashira Marie Vega-Carrillo, as they were living together and have an infant together, of not yet one year old.
The defendant has ties with Puerto Rico, as he has lived all his life in the Island. Notwithstanding, Ortiz-Quiles and his common law wife Yashira Marie Vega Carrillo participated together with the remaining four defendants in the distribution of the bank robbery proceeds of over $17,000.00 as described in Overt Act number 8, Count No. 1, of the Second Superseding Indictment at Docket No, 84, p.4. Defendant Ortiz-Quiles and his common law wife, therefore, were distributed two portions of the proceeds. Hence, defendant and his common law wife Yashira Marie Vega definitely have sufficient money to flee Puerto Rico to Continental United States. Defendant is not merely a poor person living in a Public Housing Building. A contrary argument is difficult to believe considering a $17,000.00 bank heist distribution. The fact that the defendant is facing a sentence of more than ten years to life for the weapons charge, plus a consecutive long term for the bank robbery, increases the probability of fleeing to another jurisdiction. Hence, the Court finds that pursuant to United States v. Patriarca , 948 F.2d 789, 793, defendant Ortiz-Quiles is a risk of flight by a preponderance of the evidence.
The Court concludes that although the defendant Ortiz-Quiles provided some proffer evidence to rebut the presumption as to "danger to the community," and no danger as to "flight risk," the defendant falls short as to "rebutting" the presumption as to both categories of risk.
Hence, the request to be granted bail at Docket No. 63, is DENIED, as the defendant failed to rebut the presumption of dangerousness to the community and risk of flight, 18 U.S.C. §§ 3142(e)(3) and (f)(2). Therefore, the Order of Detention Pending Trial issued by U.S. Magistrate Judge McGiverin on November 21, 2018, Docket No. 51, is hereby AFFIRMED.
Defendant Ortiz-Quiles shall remain detained without bail until further order of the Court.
IT IS SO ORDERED.

In Acevedo-Ramos , 755 F.2d at 208, the Court held:
When enacting the earlier statute, the House Judiciary Committee stated that
as is the present practice under the Bail Reform Act, ... the use of sworn testimony will be the exception and not the rule.... [B]ail hearings under the Bail Reform Act, which frequently result in detention of the accused, proceed primarily by way of proffers. They are not formal trials requiring strict adherence to technical rules of evidence. If the court is dissatisfied with the nature of the proffer, it can always, within its discretion, insist on direct testimony. But the discretion should be left to the court without imposing on it the burden of limiting admissibility to that it would permit a jury to hear.
H.R. Rep. No. 907, 91st Cong., 2d Sess. 182, 184 (1970) (emphasis added).

The conspiracy as stated in Count One of the Superseding Indictment provides, a conspiracy against the United States, "namely, a bank robbery," in violation of 18 U.S.C. §§ 2113(3) and 2113(d), "by taking from the person and in the presence of another, by force, violence, and intimidation, money or any other thing of value belonging to and in the care, custody, control, management, and possession of a bank whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC), and, in committing such offense, putting in jeopardy the life of other persons by the use of dangerous weapons," in violation of 18 U.S.C. § 371.

A Second Superseding Indictment was filed on April 6, 2018, and filed at Docket No. 84, wherein a sixth defendant was added in Counts One to Four. All the charges relating to defendant Ortiz-Quiles, however, remained the same.

The Court is aware that the standard of proof for granting bail as to "danger of the community" and "risk of flight" are not identical. See I nfra , pp. 247-48.

The defense portraits the defendant as merely a "look out" individual in the bank robbery, but the facts in the Second Superseding Indictment at Docket No. 84, state otherwise.